MAGNAVOX FORT WAYNE EMPLOYEES CREDIT UNION *v.* CHRISTINA BENSON (CHRISTINA NORRIS).

[No. 3-174A13. Filed July 23, 1975. Rehearing denied September 9, 1975.]

*David Peebles, Peters, Peebles & Terrill,* of Fort Wayne, for appellant.

*Martin T. Fletcher, Rothberg, Gallmeyer, Fruechtenicht & Logan,* of Fort Wayne, for appellee.

HOFFMAN, J.—Plaintiff-appellee Christina Benson sought recovery in the trial court of defendant-appellant Magnavox Fort Wayne Employees Credit Union (Magnavox) for certain damages attending the sale of an automobile owned by her in which Magnavox had held a security interest. Magnavox then counterclaimed for the balance outstanding on its automobile loan to Mrs. Benson. This cause was tried without the intervention of a jury, and judgment was entered in favor of appellee-Benson on her complaint in the approximate amount of her loan repayments to Magnavox after the sale of the automobile. Judgment was also entered in favor of appellee-Benson on appellant-Magnavox's counterclaim. Subsequent to the overruling of its motion to correct errors, Magnavox perfected this appeal.

The evidence adduced at trial most favorable to appellee-Benson establishes that on April 10, 1969, Benson and her

husband purchased a 1969 Ford Thunderbird from Allen County Motors, Inc. (ACM) and, after trading in another automobile, owed a balance of $4,326.52. On April 11, 1969, a security agreement was executed by Benson in favor of Magnavox creating a security interest in the Thunderbird automobile. On April 15, 1969, Benson executed a promissory note payable to Magnavox in the amount of $5,179.65, completing the financing arrangements for such automobile. This amount also included a prior debt to Magnavox in the amount of $853.13.

In July of 1969 the automobile was involved in two accidents and sustained major damage. It was taken to ACM for repairs which took approximately seven months to complete and which resulted in a statement of charges in the sum of $2,139.54. In January of 1970, ACM sent a statement for such repairs, which the Bensons were unable to satisfy. Thereafter, in April of 1970, Benson applied to Magnavox for a loan to cover the cost of repairs, which was denied.

After such loan application was made, Magnavox applied for a repossession title from the Bureau of Motor Vehicles, and received such title on May 10, 1970. Two days later Magnavox sent a notice to Benson stating that she was considered in default of the terms of the security agreement, and that the automobile would be sold. Because Benson had recently moved and had not advised Magnavox of her change of address, this notice was returned marked "unclaimed—addressee unknown."

Although ACM's Sales Manager denied at trial that ACM sold the car to foreclose a garageman's possessory repair lien,[1] ACM refused to relinquish possession of the automobile to Magnavox to be sold when requested to do so. As a result, Magnavox never gained possession or control of the vehicle at any time.

ACM attempted to sell the vehicle at an automobile auction, but was unable to do so because "it had been wrecked." And,

---

1. See: IC 1971, 9-9-5-6 (Burns Code Ed.).

for the same reason, ACM refused a request by Magnavox that it sell the automobile from its lot in a normal retail manner. ACM obtained bids on the vehicle from other dealers and later, on June 22, 1970, purchased the vehicle itself for $2,600. After deducting its bill for the repair work but no interest, storage, or sales expense, ACM remitted a remaining balance of $460.46 to Magnavox. Magnavox then transferred its repossession title to ACM after receiving such balance of the sale proceeds.

From the date of sale of the automobile until May of 1971, Magnavox continued to receive payments in the form of deductions from Benson's wages. At the time such deductions were stopped by her, there remained an unpaid balance on the note in the amount of $2,596.66.

Judgment was entered by the trial court as follows:

"The Court, having reviewed the briefs filed herein by the parties, now rules as follows: *judment* [sic] is granted against defendant and in favor of plaintiff in the sum of $2,100.00, such sum approximating the amount paid by plaintiff to defendant after the wrongful sale of the security herein by said defendant; and the Court further finds that judgment is granted against defendant in favor of plaintiff on defendant's counterclaim, said claim being denied by the Court as a result of the defective notice of sale of collateral sent to the plaintiff herein."

The trial court thus found that Magnavox had sold the automobile in question; that as a result the requirement of notice to a debtor prior to such a sale under IC 1971, 26-1-9-504(3) (Burns Code Ed.) applied; and that such notice had not been given as required, resulting in a wrongful sale of the collateral. Further, the trial court ruled against Magnavox on its counterclaim, holding that as a consequence of such wrongful sale, Magnavox was not entitled to recovery of any deficiency remaining after the sale.

Appellant-Magnavox contends that there was no evidence adduced at trial to support the trial court's conclusion that it made a sale of the subject vehicle after default as a secured

party within the meaning of IC 1971, 26-1-9-504 (Burns Code Ed.).

The parties do not contend, nor does the record herein reveal, that Magnavox actually physically conducted the sale of this automobile. Rather, the decision of the trial court must find support, if at all, in the existence of an agency or joint venture relationship between the entity conducting the sale, ACM, and Magnavox.

Here, again, the record does not disclose any facts affirmatively establishing such a relationship. Thus, the trial court herein must have found such a relationship to exist either as a matter of law or inferentially from the facts in evidence.

An examination of the legal postures of ACM and Magnavox at the time of the sale herein reveals their rights and duties to Benson and each other at such time. It is uncontroverted that Benson, the owner of the subject vehicle, left it with ACM to be repaired, that Benson did not reclaim the repaired vehicle within thirty days after so leaving it, and that ACM maintained exclusive physical possession of the automobile at all times prior to its sale. Notwithstanding ACM's assertion that it did not sell the vehicle to foreclose a garageman's possessory repair lien under IC 1971, 9-9-5-6 (Burns Code Ed.), it is clear that at all times prior to the sale ACM had such a lien perfected upon the automobile.

The perfection of such lien substantially altered Magnavox's position as to the collateral. Prior to the existence of ACM's lien, Magnavox held a perfected security interest in the automobile which was entitled to first priority. However, after ACM's lien arose, Magnavox's lien became second in priority under IC 1971, 26-1-9-310 (Burns Code Ed.), which provides:

> "When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is

statutory and the statute expressly provides otherwise." *Gables Lincoln-Mercury, Inc.* v. *First Bank & Trust Co.* (Fla. App., 1969), 219 So. 90; *Commerce Acceptance of Oklahoma City, Inc.* v. *Press* (Okl., 1967), 428 P. 2d 213. Cf: *Bryce Hospital Credit U., Inc.* v. *Warrior Dodge, Inc.* (1973), 290 Ala. 362, 276 So. 2d 607. See also: Annot., 30 A.L.R. 3d 9, § 29, at 89 (1970), and cases cited therein.

ACM thus occupied the position of a senior lienholder with regard to the collateral immediately prior to its sale, while Magnavox occupied that of a junior lienholder. However, an agency or joint venture relationship between these entities could not arise as a matter of law solely by reason of their relative interests in a single item of collateral such as the automobile in the instant case.

It must be concluded, therefore, that the finding of the trial court that a sale was made by Magnavox which was subject to the provisions of Article 9 of the Uniform Commercial Code resulted from a finding of agency or joint venture based upon inferences from the evidence adduced at trial. This issue thus becomes a question of the sufficiency of the evidence to support such finding.

In reviewing questions of the sufficiency of the evidence in a civil case, this court will not weigh the evidence or resolve questions of credibility of witnesses. We will look only to that evidence and the reasonable inferences therefrom which support the judgment of the trial court. *In Re Estate of Barnett* (1974), 159 Ind. App. 491, 307 N.E.2d 490. However, where there is a lack of evidence, or evidence from which an inference can be made, on an essential element of the claim, there must be a reversal. *Board of Com'rs. of County of St. Joseph* v. *Graf* (1972), 154 Ind. App. 57, 288 N.E.2d 798 (transfer denied).

Considering all the evidence most favorable to appellee-Benson in the record, a physical sale of the subject vehicle by ACM acting in concert with or as the agent of Magnavox was not established either directly or inferentially in the trial court.

Furthermore, the payment by ACM to Magnavox of the excess of the sale price over the amount of its lien, and the subsequent transfer to ACM of the repossession title held by Magnavox did not constitute a sale of any ownership interest in the collateral within the intendment of IC 1971, 26-1-9-504, *supra,* so as to invoke the notice requirement of such statute.

Such payment of the excess sale proceeds constituted only a transfer of funds to which ACM had no rightful claim, rather than consideration for the transfer by Magnavox of an ownership interest in its collateral. This is because IC 1971, 9-9-5-6, *supra,* which is the statutory basis for ACM's superpriority of lien, requires that such a lienholder remit any sale proceeds in excess of his lien to the former owner of the vehicle. However, even assuming, *arguendo,* that ACM erroneously paid such excess sale proceeds to Magnavox rather than to Benson,[2] Benson does not contend that such amount was wrongfully applied or appropriated by Magnavox.

Furthermore, if, notwithstanding ACM's subjective intent, the sale of this automobile by ACM was a garageman's lien foreclosure sale, such sale would have terminated any ownership rights in the vehicle of either Benson or Magnavox. In such case, any purported transfer by Magnavox of an ownership interest in the vehicle through an assignment of the repossession title it had obtained would have been a nullity.

It must be concluded that no sale of the subject vehicle or any ownership interest therein was made by appellant-Magnavox, and that the decision of the trial court herein that such a sale was made is not supported by the evidence and, therefore, is contrary to law. Accordingly, the judgment entered herein must be reversed and this cause remanded for further proceedings consistent with this opinion.

2.  Alternatively, it could be argued that such payment constituted "proceeds" of the collateral in which Magnavox had a security interest under the provisions of IC 1971, 26-1-9-306(2) (Burns Code Ed.).

Judgment reversed and cause remanded.

Staton, P.J. and Garrard, J., concur.

NOTE.—Reported at 331 N.E.2d 46.