Robert JACKSON, Appellant,

v.

STATE of Indiana, Appellee.

No. 379S66.

Supreme Court of Indiana.

March 31, 1980.

Herbert I. Shaps, Dyer, for appellant.

Theodore L. Sendak, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was charged with murder in the second degree, Ind.Code § 35–1–54–1 (Burns 1975). Upon a jury verdict of guilty as charged, he was sentenced to life imprisonment. In this direct appeal, he raises the following issues:

(1) Whether the evidence was sufficient to sustain the verdict.

(2) Whether the trial court erred in giving its instruction on intoxication and refusing the one tendered by the defendant.

(3) Whether the trial court erred in admitting, over defendant's objection, hearsay evidence.

(4) Whether the trial court erred in refusing to grant a mistrial for alleged prosecutorial misconduct during final arguments.

\* \* \* \* \* \*

## ISSUE I

As a court of review, we will neither reweigh the evidence nor judge the credibility of the witnesses. *Robinson v. State*, (1977) 266 Ind. 604, 365 N.E.2d 1218. Rather, we will look only to that evidence most favorable to the State and all reasonable inferences to be drawn therefrom, to determine whether a reasonable juror could have found the existence of each of the elements of the crime charged beyond a reasonable doubt. *Baum v. State*, (1976) 264 Ind. 421, 345 N.E.2d 831.

In September of 1977, defendant was living in an apartment in Gary, Indiana. Other members of the household were his five younger siblings, his mother and the decedent, who was his mother's consort. His mother and the decedent had never married, but they had lived together for ten years. The relationship between the defendant and the decedent was one of stepson and step-father, and the two had a good relationship.

On the morning of September 18, 1977, defendant came into his mother's room and told her that the basement was flooded with oil, when, in fact, it was not. Because the defendant had been acting strangely for the preceding seven days, Mrs. Jackson went next door to Mrs. Gates' apartment to

telephone a doctor. Meanwhile, Debra, one of the defendant's sisters, observed him standing by himself muttering, "Die." When she tried to leave the apartment, he grabbed her, purportedly to protect her from someone who he said was trying to kill her. Debra broke loose and ran next door to join her mother. Several minutes later, as Mrs. Jackson and Debra were leaving the Gates' apartment, they heard the sounds of a scuffle coming from their apartment. Debra ran up to her porch and found the defendant holding a hammer in his hand as he stood over Mr. Johnson, who was lying on the floor in a pool of his own blood. The defendant then told Debra that Mr. Johnson would not be bothering her anymore and ran to Mrs. Gates' apartment. When the police arrived, defendant locked himself inside a bathroom but surrendered shortly thereafter.

█ Defendant contends that there was insufficient evidence that it was he who killed Mr. Johnson. He notes that there were no eyewitnesses to the slaying and that the evidence was wholly circumstantial or opinion testimony. However, as we stated in *McAfee v. State*, (1973) 259 Ind. 687, 689, 291 N.E.2d 554, a conviction may be sustained by circumstantial evidence alone, and in the case at bar, there was sufficient evidence from which the jury could have concluded, beyond a reasonable doubt, that the defendant did kill Mr. Johnson.

Defendant next contends that the State failed to meet its burden of proving him sane beyond a reasonable doubt.

█ It was the conclusion of all three psychiatrists that defendant was not responsible for his conduct by virtue of his mental state; nevertheless, a jury could have concluded from the testimony of Dr. Batacan that defendant's bizarre conduct was a direct result of recent or concomitant intoxication caused by the voluntary ingestion of "street drugs." As we emphasized in *Hill v. State*, (1969) 252 Ind. 601, 615–616, 251 N.E.2d 429, a jury is not bound

by the definitions or conclusions of the experts on such matters. "They need not be influenced by the use of specific labels, but rather must determine for themselves, whether the defendant's disability was such as to excuse him from criminal responsibility." *Id.* at 616, 251 N.E.2d at 438. Temporary mental incapacity, when induced by voluntary intoxication, normally furnishes no legal excuse for, or defense to, a crime. *Fisher v. State*, (1878) 64 Ind. 435; *Hooker v. State*, (1979) Ind.App., 387 N.E.2d 1354. *See also*, 22 C.J.S. Criminal Laws §§ 70, 72, (1961). However, there are exceptions to the above-stated rule. Where the ingestion of intoxicants, though voluntary, has been abused to the point that it has produced mental disease such that the accused is unable to appreciate the wrongfulness of his conduct or is unable to conform his conduct to the requirements of the law, the law does not hold him responsible for his acts. *Fisher v. State, supra.** It is for the jury to determine whether the accused's conduct was the result of a diseased mind—regardless of the source of the disease—or was the result of voluntary intoxication.

█ Here, there was sufficient evidence for a reasonable juror to have concluded, beyond a reasonable doubt, that defendant's actions were the direct result of voluntary intoxication rather than mental disease or defect.

█ Defendant also asserts that the State failed to prove malice. However, the intentional use of a deadly weapon in circumstances where it is likely to cause death is sufficient to raise an inference of malice which will sustain a charge of second degree murder. *Hill v. State, supra*, 252 Ind. at 618, 251 N.E.2d 429.

### ISSUE II
Defendant next contends that the trial court erred in giving Final Instruction No. 9 over his objection. Said instruction reads:

"The jury is not bound by the definitions or conclusions of experts who have testified as to what is a mental disease or

---

* *Anderson v. State*, (1978) Ind.App., 380 N.E.2d 606.

mental defect. Mental disease or mental defect includes any abnormal condition of the mind which substantially affects mental or emotional processes and substantially impairs behavior controls. Thus the jury is instructed to consider expert testimony in light of all other testimony presented concerning the development, adaptation and functioning of his mental and emotional processes and behavior controls and not necessarily accept the ultimate conclusions of the experts as to the defendant's legal sanity or insanity. This is your decision and only your decision. You must decide the extent of the defendant's mental disability, if any.

"Mental disability may be based on the use or abuse of alcohol or other drugs even though intoxication is not a defense to a crime. A defendant charged with a crime who was voluntarily under the influence of any drug at the time of the commission of that crime may not raise that fact as a defense. However, intoxication from alcohol or other drugs may be so extreme that a person is either incapable of forming or entertaining a malicious purpose to kill. It is this mental capability you must examine. If the act charged was committed while his inhibitions were loosened or removed by the use of drugs or alcohol and in a state of intoxication, it is not a defense. If the act charged was committed while his mind was damaged or altered so that he was acting while in a state of psychosis, then brain damage or brain alteration may be so great that it amounts to insanity.

"The burden of proving insanity is not on the defendant, however. The burden is on the state to prove to you beyond a reasonable doubt that at the time of the commission of the acts charged the defendant had sufficient mental ability to be criminally responsible for his acts."

■ He contends that the trial court, "by repeating a number of times that 'intoxication is not a defense to a crime,' cast a great deal of suspicion on whether or not it was defendant's burden to prove that he was in fact not intoxicated in order to utilize the insanity defense." The instruction

does state three times that voluntary intoxication is not a defense, but each such instance is counterbalanced by a statement to the effect that a diseased or defective mind may be based upon the abuse of narcotics, even though voluntarily ingested. The instruction does not "cast suspicion" on his insanity defense, either in fact or within the meaning of *Brannum v. State*, (1977) 267 Ind. 51, 366 N.E.2d 1180.

Defendant also contends that the instruction should have omitted any reference to "voluntary intoxication" because it was irrelevant to this case. We disagree. Indeed, the central dispute in this case was whether defendant's actions were the result of voluntary intoxication or of a diseased mind. Thus, the trial court acted properly in instructing the jury as to the law on such matters.

Defendant further contends that Final Instruction No. 9 is "confusing and compound," but we see no merit here. The area of law covered by the instruction is complex and distinctions therein are difficult to discern but the instruction is correct and adequate.

The instruction tendered by the defendant and refused by the court is as follows:

"Mental disease or defect may arise from the use or abuse of alcohol and other drugs where such usage results in a condition of the mind which substantially affects mental or emotional processes and substantially impairs behavior controls."

■ The issues raised in defendant's proposed instruction were fully and adequately covered in the court's final instruction No. 9. The refusal of a trial court to give a tendered instruction is not reversible error if the substance of the instruction was adequately covered by other instructions given by the court. *Vacendak v. State*, (1976) 264 Ind. 101, 340 N.E.2d 352; *Hash v. State*, (1972) 258 Ind. 692, 284 N.E.2d 770.

### ISSUE III

■ Dr. Frank Hogle testified that his conclusion (that defendant was insane)

was based, in part, upon records indicating that the defendant had been quite upset by his natural father's early death. On cross-examination, the Prosecutor asked Dr. Hogle if he was aware that the defendant had told a Dr. Constan that he had never known his natural father. Defense counsel objected to that question on the grounds that there was no evidence of such in the record and that such evidence was hearsay. However, defendant's mother had previously testified that the defendant had not known his natural father. Consequently, any error in this line of questioning was harmless. The erroneous admission of evidence is harmless if it is only cumulative of other undisputed and properly admitted evidence. *Ballard v. State*, (1974) 262 Ind. 482, 492, 318 N.E.2d 798; *Chatman v. State*, (1975) 263 Ind. 531, 334 N.E.2d 673.

Defendant further contends that the trial court should have instructed the jury that his aforementioned testimony regarding what he had told Dr. Constan was to be considered solely as it related to the credibility of Dr. Hogle's conclusions upon the insanity issue and not to prove the truth of the matters contained in such testimony. However, defendant did not request the trial court to so admonish the jury, and he cannot claim error for a failure to do so. *Hill v. State*, (1908) 169 Ind. 561, 83 N.E. 243; *Holland v. State* (1976) Ind.App., 356 N.E.2d 686.

### ISSUE IV

During his final arguments to the jury, the Prosecutor attempted to explain the law regarding voluntary intoxication as it relates to criminal responsibility. The trial court interrupted and informed the jury that the Prosecutor's interpretation of the law was incorrect, and the Prosecutor, while still in the jury's presence, took issue with the trial court's interpretation.

Defendant now contends that the trial court erred in refusing to grant his motion for mistrial. However, the record does not reflect that defense counsel made such a motion; rather, he merely stated, "Your Honor, at this point, I should move for a mistrial." The use of the subjunctive, "should," reflects a mere contingent or hypothetical action. In any event, the final instructions are presumed to correct any misstatements of law made during final arguments. *Tyson v. State*, (1979) Ind., 386 N.E.2d 1185, 1192.

In this regard, the defendant also charges that the trial court failed to properly admonish the jury "to cure the prejudice and confusion which arose as a result of the prosecutor's remarks." However, inasmuch as he did not request an admonishment, nor complain about the adequacy of the one given, he cannot claim error upon appeal. *Hill v. State*, (1908) *supra; Holland v. State, supra.*

Defendant also assigns error to the trial court's denial of his motions for a directed verdict. However such contentions are but another way of challenging the sufficiency of the evidence, which we have already discussed in Issue II.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.