**CITY OF INDIANAPOLIS, Appellant (Defendant Below),**

v.

**Sherry PARKER, Appellee (Plaintiff Below).**

**No. 2-281A70.**

Court of Appeals of Indiana, Second District.

Oct. 28, 1981.

City-County Legal Division, John P. Ryan, Corp. Counsel by Richard S. Ewing, Chief Trial Deputy, Robert M. Kelso, Certified Legal Intern, Forbes & Pennamped by John G. Forbes, Indianapolis, for appellant.

Maurice R. Petit, John L. Hess, Petit, Jones & Hess, Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendant-appellant City of Indianapolis (the City) appeals from a judgment of $15,-000 entered in favor of plaintiff-appellee Sherry Parker (Parker) in Parker's action for negligence, claiming that the evidence was insufficient to establish the City's negligent conduct as the cause in fact of Parker's personal injuries, and that the trial court erred in admitting certain testimony.

We affirm.

## FACTS

There have been two trials in this case. The first took place in September, 1974, the second in August, 1980. This appeal is from the latter trial.

The evidence most favorable to the judgment discloses that at approximately 7:00 P.M. on December 7, 1969, a two-car collision occurred in Indianapolis at the intersection of Holt Road and Minnesota Street.

Parker and her husband were traveling north on Holt Road, a two-lane highway running north and south; Parker's husband was driving and Parker was in the front passenger's seat. As their car approached the intersection of Holt Road and Minnesota Street, a two-lane highway running east and west, Parker noticed a car traveling east on Minnesota; it also was headed for the intersection of Holt and Minnesota. Parker testified on direct examination regarding what happened immediately after she observed the eastbound car:

> And we come ___ was heading north on Holt and I says, ___ he says ___ I saw the car coming. I said, it's not going to stop. He says, we've got a green light. Surely they have a red light, as we ___ you know, entered the intersection.

Q Now, Ms. Parker, directing your attention to directly prior to the collision, did you have an opportunity to look at the light?

A   Yes, sir. As we were heading north we had a ___ the light was green as we were approaching the intersection. That's ___ you know, I saw the car wasn't going to stop. That's when I told my husband, I said, stop if you can. You know. And then the impact happened.

Q   All right. Now again, would you tell the court what you were doing? You were going north on Holt Road.

A   That's correct.

Q   Is that right?

A   Yes, sir.

Q   And you were headed ___ headed in this direction. Your testimony was the light was green?

A   Yes, sir.

Q   You proceeded through the intersection and you collided with ___

A   Another car.

*Record* at 281–82.

Parker sustained injuries as a result of the collision.

Marion County Sheriff Jerry L. Hubbs (Hubbs) was sent to the accident scene. He testified as to the condition of the automatic traffic signal at the northwest corner of Holt Road and Minnesota Street at 7:05 P.M., roughly five minutes after the collision:

Q   Okay. Was there anything unusual about the ___ about the light on the northwest corner?

A   The only thing I can remember when I arrived on the scene I was able to observe a green light for north bound traffic on Holt Road, also I was able to observe a green light for east bound traffic on Minnesota.

Q   All right. So the drivers that were driving in those directions would see ___ both see green. Is that right?

A   Yes, sir.

*Record* at 150.

Hubbs also testified that both Mr. Parker and the driver of the eastbound car, identified only as Mr. Jones, were traveling at a lawful rate of speed when the accident occurred.

William R. Sauer (Sauer), a signal repairman for the City at the time of the accident, testified at the first trial. A transcript of Sauer's previous testimony was offered to be read into evidence at the second trial. Jane Barnard (Barnard), Court Reporter for the Marion County Superior Court, Civil Division, Room 3 at the time of the second trial, testified that the record of the first trial had been made by mechanical device (disks), and that she had made an accurate transcript of pertinent portions of that record for purposes of the second trial. Barnard's reporter's certificate verified the substance of her testimony.

Phillip D. Rowe (Rowe), a private investigator employed by Parker, testified as to his efforts to locate Sauer before the second trial. Rowe first consulted the telephone directory, city directory, and other current publications, and was unable to find Sauer's name. Next, Rowe contacted Sauer's former wife, who advised him that she did not know Sauer's whereabouts. Rowe acted upon her suggestion that he contact Sauer's brother. Sauer's brother did not know Sauer's whereabouts, nor did he know of anyone who might be in contact with Sauer. Rowe left his name and phone number as well as the name and number of Parker's attorney with Sauer's brother, requesting that, if possible, he advise Sauer that his attendance at trial was being sought by subpoena. Rowe testified that he had a subpoena commanding Sauer's attendance at trial as a witness at all stages of his search. The subpoena was produced at trial.

Over the City's objections, the transcript of Sauer's former testimony was admitted into evidence as an exhibit. That testimony indicated that traffic at the intersection of Holt Road and Minnesota Street was controlled by two automatic traffic signals. The first, on the southeast corner, functioned properly. However, a fence precluded drivers traveling east on Minnesota from seeing the signal until they were within 75–100 feet of the intersection. Drivers had a clear view of the second signal, locat-

ed on the northwest corner of the intersection. But vehicles frequently hit this signal, causing its head to loosen and turn, a problem compounded by the fact that the headbolt of the signal, installed in the 1930s, was rusted. Once loosened, the head could be tightened only temporarily by means of wires. Indeed, Sauer testified that even a strong wind could dislodge the head. Because he had been summoned to repair the signal some ten times during the 30 days preceding the Parker-Jones collision, Sauer had notified his supervisor of the problem and recommended that a permanent solution be devised. His suggestion was not heeded.

Sauer further testified that he was directed to the intersection of Holt and Minnesota to repair the signal on the northwest corner on the evening of December 7, 1969. When he arrived, at 7:10 P.M., he discovered that the wires were broken and the head was rotated "a quarter turn." Thus, Sauer testified, vehicles traveling northbound on Holt and eastbound on Minnesota were seeing green lights simultaneously.

The deposition of Dr. John Tondra (Tondra), which had been admitted into evidence at the first trial, was introduced into evidence at the second trial over the City's objection. Tondra, a plastic surgeon, had been deposed as to the nature of Parker's injuries, and had described and estimated the cost of surgical procedures which would reduce Parker's scars. Private investigator Rowe testified as to his efforts to locate Tondra before the second trial. Tondra's home and office numbers appeared in the Indianapolis telephone directory. Upon contacting Tondra's office by phone, Rowe was advised that Tondra had retired, possibly moving to Florida. The address of Tondra's Florida residence was unavailable. Rowe testified that he had a subpoena commanding Tondra's attendance at trial as a witness at all stages of his search. The subpoena was produced at trial.

1. The issues have been renumbered in the interest of clarity.

2. The City concedes that *if* its negligence was in fact the cause of Parker's injuries, that negligence was also the proximate cause of Parker's

## ISSUES

The City raises five issues:[1]

1. Was there sufficient evidence to establish the City's conduct as the cause in fact of Parker's injuries?

2. Did the trial court err by admitting into evidence, over objection, the transcript of Sauer's former testimony without having it authenticated by the reporter who originally put the testimony on disks?

3. Did the trial court admit into evidence, over objection, the transcript of Sauer's former testimony without the requisite showing that Sauer was unavailable to testify in person, thereby committing reversible error?

4. Did the trial court err by admitting the transcript of Sauer's former testimony into evidence as an exhibit?

5. Did the trial court admit into evidence, over objection, the deposition of Tondra without the requisite showing that Tondra was unavailable to testify in person, thereby committing reversible error?

## DECISION

*ISSUE ONE*—Was there sufficient evidence to establish the City's conduct as the cause in fact of Parker's injuries?

*PARTIES' CONTENTIONS*—The City does not dispute that on December 7, 1969, the traffic signal at the northwest corner of Minnesota Street and Holt Road was in a defective condition due to the City's negligence. The City maintains, however, that Parker offered insufficient proof that the City's negligence was the cause in fact of her injuries.[2] In essence, the City argues that we must infer from the fact that neither driver testified in Parker's behalf that

injuries: "The City is not attempting to argue that a traffic accident is not a possible and foreseeable result of a defective traffic signal." *Appellant's brief* at 11. *See Elder v. Fisher* (1966) 247 Ind. 598, 217 N.E.2d 847.

one or both of them entered the intersection *not* because the light was green, but for some other reason. Parker responds that there was ample evidence of factual causation.

*CONCLUSION*—The evidence was sufficient to establish the City's conduct as the cause in fact of Parker's injuries.

▆▆▆ In reviewing the sufficiency of the evidence in a civil case, the question to be resolved is whether there is substantial evidence of probative value supporting the trial court's judgment. *Grad v. Cross* (1979) Ind.App., 395 N.E.2d 870. This court will neither weigh the evidence nor judge the credibility of witnesses. *Magnavox Fort Wayne Employee Credit Union v. Benson* (1975) 165 Ind.App. 155, 331 N.E.2d 46; *Cole Real Estate Corp. v. Peoples Bank & Trust Co.* (1974) 160 Ind.App. 88, 310 N.E.2d 275. We will consider only the evidence most favorable to the judgment along with all reasonable inferences to be drawn therefrom. *Cole, supra.* Only if there is a lack of evidence or evidence from which a reasonable inference can be drawn on an essential element of the plaintiff's claim must there be a reversal. *Magnavox, supra.*

▆▆▆ The City correctly asserts that causation in fact is an essential element of a cause of action for negligence. *Hayes Freight Line, Inc. v. Wilson* (1948) 226 Ind. 1, 77 N.E.2d 580; *Tabor v. Continental Baking Co.* (1942) 110 Ind.App. 633, 38 N.E.2d 257. *See generally* W. Prosser, *Handbook of the Law of Torts* § 41 (4th ed. 1971). Indiana courts have used the "but for" or "sine qua non" rule to determine causation in fact. The rule provides that the defendant's negligent conduct is not a cause in fact of the plaintiff's harm if the harm would have occurred without it. *Id. See also* 21 I.L.E. *Negligence* § 62 (1959).

▆▆▆ The City is also correct in asserting that the plaintiff in a negligence action has the burden of proving causation in fact by a preponderance of the evidence. *See Palace Bar Inc. v. Fearnot* (1978) 269 Ind. 405, 381 N.E.2d 858; *Prosser, supra.* A mere possibility of causation, the City emphasizes, is not enough. As our supreme court said in *Palace Bar, supra,* in discussing the plaintiff's burden of proof on issues essential to his cause of action for negligence:

> [P]laintiff's burden requires that she present evidence of probative value based on facts, or inferences to be drawn from facts. Her burden may not be carried with evidence based merely upon supposition or speculation. An inference cannot arise or stand by itself. There must first be a fact established from which an inference arises. *Prudential Insurance Co. v. VanWey* (1945) 223 Ind. 198, 204, 59 N.E.2d 721, 725.

269 Ind. at 409, 381 N.E.2d at 861.

▆▆▆ The City's contention that factual causation rests upon speculation and conjecture is a chimera. There is testimony by Parker (without objection) that her husband entered the intersection in question because the light was green. And the testimony of Hubbs and Sauer establishes that within moments of the collision, northbound traffic on Holt Road and eastbound traffic on Minnesota Street were seeing green lights simultaneously. The obvious, reasonable inference is that Parker's husband and Jones entered the intersection because the lights were green, thereby affording a reasonable basis for the conclusion that "but for" the City's negligence, the accident would not have occurred. *Hayes, supra; Tabor, supra.*

*ISSUE TWO*—Did the trial court err by admitting into evidence, over objection, the transcript of Sauer's former testimony without having it authenticated by the reporter who originally put the testimony on disks?

*PARTIES' CONTENTIONS*—The City says that Barnard was not qualified to authenticate the transcript of Sauer's former testimony. It relies upon Ind. Rules of Procedure, Trial Rule 74(E) for the proposition that a transcript of testimony given at a former trial, in order to be admissible at a subsequent trial of the same case, must be authenticated by the reporter who made the record at the former trial, not by the

reporter who made the transcript from that record for the later trial. Parker maintains that the City's reliance upon T.R. 74(E) is misguided, and that the trial court was authorized to have Barnard alone authenticate the transcript.

■ *CONCLUSION*—The trial court did not err by admitting the transcript of Sauer's former testimony without having it authenticated by the reporter who originally put the testimony on disks.

T.R. 74(E) is of no solace to the City. It provides:

> Stenographic report or transcript as evidence. Whenever the testimony of a witness at a trial or hearing which was *stenographically* reported is admissible on appeal or in evidence at a later trial, proceeding, or administrative hearing, it may be proved by the transcript thereof duly certified by the person who reported the testimony.

(emphasis supplied)

This *permissive* language applies to situations in which the record of the first trial was made by *stenographic* means. The record in this case was made by mechanical device.

More relevant is T.R. 74(A), which allows the record of oral evidence to be taken by mechanical device and transcribed:

> A transcript, typewritten or in longhand, made in part or entirely from such recording, shall serve the same purpose as if made from shorthand notes and if certified, as in the case of a transcript of shorthand notes, shall serve the same purpose and be as valid as if made from shorthand notes.
>
> Provided further, that *the judge may authorize or direct the court reporter or any other responsible, competent person, in his discretion, to make a transcription from such recordings,* and the same shall be certified by the person making said transcriptions in the same manner and have the same effect as if made from shorthand notes.

(emphasis supplied)

Professors Harvey and Townsend understandably recommend that transcriptions made from mechanical devices be certified by the reporter who put the evidence on the device and by the reporter who transcribed it. 4 *W. Harvey & R. Townsend, Indiana Practices* 524 (1971). Nevertheless, the language of the rule permits the procedure followed by the trial court here (particularly so when the first trial took place, for whatever reason, six years before the second).

*ISSUE THREE*—Did the trial court admit into evidence, over objection, the transcript of Sauer's former testimony without the requisite showing that Sauer was unavailable to testify in person, thereby committing reversible error?

*PARTIES' CONTENTIONS*—The City claims that Sauer's testimony from the first trial was admitted at the second trial without the necessary showing that Sauer was unavailable to testify in person. Parker responds that there was an adequate showing of unavailability.

*CONCLUSION*—There was a sufficient showing that Sauer was unavailable to testify in person at the second trial. Thus, the trial court did not err in admitting the transcript of his former testimony.

■ Former testimony is, of course, a substitute for testimony given in person. Thus, the policy favoring personal presence requires that a showing of unavailability be made before the testimony of a witness at a former trial may be introduced at a subsequent trial. *See generally E. Cleary, McCormick's Handbook of the Law of Evidence* § 255 (2d ed. 1972). *New York Central Railroad Co. v. Pinnell* (1942) 112 Ind. App. 116, 122, 40 N.E.2d 988, 990, sets forth guidelines for showing unavailability:

> In civil cases the testimony of one witness cannot be given in evidence by another in a subsequent trial of the same case, until it is made to appear that the original witness is dead, or is insane, or otherwise so physically disabled that by the exercise of due diligence his deposition could not have been taken, or that the witness is a nonresident of the state,

or *that he is absent from his residence, and his whereabouts cannot, by due diligence, be ascertained,* or that he has absented himself by the procurement of the opposite party. *Wabash Railroad Co. v. Miller,* 1901, 158 Ind. 174, 183, 61 N.E. 1005.

(emphasis supplied)

■ Applying the *Pinnell* rule to these facts, it is immediately apparent that the trial court properly concluded, based upon Rowe's testimony, that Sauer's whereabouts could not, by due diligence, have been ascertained.

■ Moreover, Sauer's testimony as to causation in fact was cumulative of undisputed testimony by Parker and Hubbs on this question. *See* Issue One. The City could not be prejudiced by the admission of the testimony, even if error were to be assumed: "The erroneous admission of evidence is harmless if it is only cumulative of other undisputed and properly admitted evidence." *Jackson v. State* (1980) Ind., 402 N.E.2d 947, 951. And this case was tried before the court without a jury. "[H]arm arising from evidentiary error is lessened if not totally annulled when the trial is by the court sitting without a jury." *King v. State* (1973) 155 Ind.App. 361, 366, 292 N.E.2d 843, 846 (citing *Shira v. State* (1918) 187 Ind. 441, 119 N.E. 833).

*ISSUE FOUR*—Did the trial court err by admitting the transcript of Sauer's former testimony into evidence as an exhibit?

■ *PARTIES' CONTENTIONS*—The City maintains that the trial court was without authority to admit the transcript of Sauer's former testimony as an exhibit because Parker offered only to read the testimony into evidence, not introduce it as an exhibit.[3] Parker says that it was within the court's discretion to prescribe the manner in which the testimony should be introduced.

■ *CONCLUSION*—The trial court did not err by admitting the transcript of Sauer's former testimony as an exhibit.

Again the City seeks to sow seeds of reversal arising out of the admission of Sauer's former testimony. The City mistakenly leans on one case, *Carey v. State* (1979) Ind.App., 389 N.E.2d 357, to sustain the proposition that a transcript must be offered *as an exhibit* before it may be so admitted. It stands for no such proposition. In fact we find no authority precluding a trial court which has ruled that such evidence is admissible from specifying the manner in which it will be introduced. It may, in general, be better practice to order the reading of former testimony into evidence. *See Studabaker v. Faylor* (1908) 170 Ind. 498, 83 N.E. 747; *Sage v. State* (1891) 127 Ind. 15, 26 N.E. 667. Nevertheless, we cannot say that a trial court abuses its discretion by ordering such testimony to be introduced as an exhibit. This is particularly true when, as here, trial is to the court. And once again, for the reasons outlined under Issue Three, the City could not be prejudiced by the admission of the testimony, even if error were to be assumed. *Jackson, supra; King, supra.*[4]

*ISSUE FIVE*—Did the trial court admit into evidence, over objection, the deposition of Tondra without the requisite showing that Tondra was unavailable to testify in person, thereby committing reversible error?

*PARTIES' CONTENTIONS*—The City would eliminate Tondra's deposition because it was introduced upon inadequate proof of his unavailability to testify in person. Parker responds that the trial court's finding of unavailability was supported by sufficient evidence.

---

3. It is true, as the City points out, that an objection to the admission of the transcript would have been useless: Objections to the admission of written or documentary evidence must be made *before* the evidence is introduced in order to preserve error for review. *Snow v. Cannelton Sewer Pipe Co.* (1965) 138 Ind.App. 119, 210 N.E.2d 118.

4. Contrary to the City's assertion that it was deprived of the opportunity to object to specific questions in the transcript by the manner in which it was admitted, the City had ample opportunity to interpose such objections—as evidenced by the fact that other objections were lodged at the time of the offer.

*CONCLUSION*—There was a sufficient showing that Tondra's attendance at trial court not be procured by subpoena. Therefore, the trial court did not err in admitting his deposition testimony.

The use of depositions of non-party witnesses as evidence at trial is regulated by T.R. 32(A)(3):

> (3) *The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds*:
>
> (a) that the witness is dead; or
>
> (b) that the witness is outside the state, unless it appears that the absence of the witness was procured by the party offering the deposition; or
>
> (c) that the witness is unable to attend or testify because of age, sickness, infirmity, or imprisonment; or
>
> (d) *that the party offering the deposition has been unable to procure the attendance of the witness by subpoena*; or
>
> (e) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used; or
>
> (f) upon agreement of the parties.

(emphasis supplied)

As no Indiana court has interpreted T.R. 32(A)(3)(d), we are obliged to do so. It harbors no mystery. One author, in interpreting the federal counterpart of the Indiana provision, has said that

> [t]he clause . . . . is evidently intended to cover a case in which the party cannot effectively prove that the deponent is over one hundred miles from the court, but has been unable to serve a subpoena on him. A showing of some diligence will probably be required.

*Pike & Willis, The New Federal Deposition-Discovery Procedure*, 38 *Col.L.Rev.* 1436, 1447 (1938), quoted in 8 *C. Wright & A. Miller, Federal Practice and Procedure* § 2146 (1970).

The question whether such a deposition should be allowed into evidence is one committed to the trial court's discretion. *United States v. Bowen* (5th Cir. 1969) 411 F.2d 923. *See also Wells v. Gibson Coal Co.* (1976) 170 Ind.App. 445, 352 N.E.2d 838.

This court will not weigh the evidence. In view of Rowe's testimony regarding his unsuccessful efforts to serve Tondra with a subpoena, we can only conclude that the trial court's finding that Tondra was unavailable to testify in person was supported by sufficient proof.

The considerations as to trial to the court discussed in Issues Three and Four apply with equal force here. *King, supra*. It could be added that there were photos depicting Parker's injuries admitted into evidence without objection by virtue of which the trial court could have assessed Parker's damages without relying upon the disputed testimony. *Jackson, supra*.

Judgment affirmed.

SHIELDS and SULLIVAN, JJ., concur.