## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 20 2017, 9:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Christa Gorman,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 20, 2017

Court of Appeals Case No.
49A02-1610-CR-2295

Appeal from the Marion Superior Court

The Honorable William Nelson, Judge

Trial Court Cause No.
49G18-1510-F6-37509

**Brown, Judge.**

[1] Christa Gorman appeals her conviction for resisting law enforcement as a level 6 felony. Gorman raises one issue which we revise and restate as whether there is sufficient evidence to support the trier of fact's rejection of her insanity defense. We affirm.

*Facts and Procedural History*

[2] On October 20, 2015, Indianapolis Metropolitan Police Officer Paul Watkins responded to a dispatch regarding a female, later identified as Gorman, going through some items in a vehicle. When Officer Watkins arrived at the scene, the complainant pointed out the vehicle in which Gorman had left traveling southbound on Shadeland Avenue. Officer Watkins attempted to catch up with Gorman's vehicle in his fully-marked police vehicle and activated its emergency lights and siren, and Gorman pulled her vehicle to the side of the road. Officer Watkins exited his police vehicle and walked toward Gorman's vehicle, and when he reached the back of it, Gorman "sped off." Transcript Volume II at 26. As Officer Watkins pursued her with his lights and sirens activated, Gorman traveled through a red stoplight, merged onto I-465 north, later merged onto I-69 north, and drove off the roadway into a ditch. Officer Watkins exited his vehicle, and Gorman looked at Officer Watkins and "took off again." *Id.* at 28. Officer Watkins and another officer drove on each side of Gorman's vehicle in an attempt to force her to exit the interstate. Gorman exited the interstate onto 96th Street, and at that point she became pinned in by police vehicles and was taken into custody. Officer Watkins heard Gorman make

statements which led him to believe she was intoxicated or on some kind of drug.

[3] Officer Watkins met with Indianapolis Metropolitan Police Officer Craig Wildauer, who was assigned to the DUI unit, at Eskenazi Hospital to assist with the investigation. Officer Wildauer observed that Gorman's balance was unsteady, her speech was slow, and she would speak with her eyes closed. Officer Wildauer was not able to perform the horizontal gaze nystagmus test on Gorman because she could not keep her eyes open and he could not go through the steps for the test. Gorman stated to Officer Wildauer that she had smoked methamphetamine and taken Xanax a few days earlier. Gorman consented to a blood draw, and the toxicology report indicated positive findings for methamphetamine of "89 ±16 ng/mL" and for amphetamine of "39 ±7 ng/mL." State's Exhibit 3.

[4] The State charged Gorman as alleged in an amended information with: Count I, resisting law enforcement as a level 6 felony; Count II, operating a vehicle while intoxicated endangering a person as a class A misdemeanor; and Count III, operating a vehicle with a schedule I or II controlled substance or its metabolite in the body as a class C misdemeanor. Gorman filed a motion for psychiatric examination to determine her sobriety and competence to stand trial. The trial court appointed George Parker, M.D., and Stephanie Callaway, PsyD, to evaluate in part whether Gorman was of sound mind on the date of the alleged offenses, both doctors filed reports with the court. Gorman also filed a notice of defense of mental disease or defect.

[5] In his report, Dr. Parker stated that Gorman "described her drug use in the weeks prior to her arrest on the current charges as 'mostly beer and smoking dope,' referring to methamphetamine." Appellant's Appendix Volume II at 124. Under a heading for diagnostic impression, Dr. Parker's report stated "[u]nspecified psychotic disorder" and also methamphetamine, alcohol, and cannabis use disorder "in remission in a controlled environment." *Id.* at 125. The report stated that during the clinical interview Gorman's account of the offenses was presented dramatically in a stream of consciousness style though apparently with different content than she provided for her attorney, and the difference in her accounts and her dramatic style suggested the possibility of persistent disorganization of her thought process. Dr. Parker's report stated that Gorman did not appear to meet the criteria for schizophrenia as her psychosis was brief in duration, but she may be a candidate for a diagnosis of bipolar disorder based on her elevated mood, rapid speech, and dramatic emotions during the interview. His report also stated that Gorman's psychosis did not appear to be due to intoxication from drugs as she reported no use of alcohol or drugs for two days prior to the day of her arrest, and a blood test after her arrest was positive only for opiates which typically do not cause agitation or psychosis. Given the limited information he had he believed the most appropriate diagnosis was an unspecified psychosis.

[6] Dr. Parker's report further stated "[i]t is my opinion, with reasonable medical certainty, that [Gorman] did have a mental disease . . . at the time of the alleged offenses" and "[i]t is further my opinion, with reasonable medical certainty,

that [Gorman] did not appreciate the wrongfulness of her behavior at the time of the alleged offenses." *Id.* at 128. His report stated that, based on her account, it appears Gorman developed paranoid delusions before leaving Logansport, began to experience grandiose delusions and ideas of reference while driving around Indianapolis, and ultimately began to experience auditory hallucinations. His report further stated that, though Gorman initially behaved appropriately by responding to the police car behind her, this rational thinking and behavior was easily overwhelmed by her disorganized and paranoid delusional thinking which overrode her initial reaction and caused her to drive away from the officer. His report further stated "[i]n addition, though her thinking and behavior were clearly impaired on the day of the alleged offense, this was primarily due to her psychotic and delusional thought processes, and not to voluntary intoxication." *Id.* at 129.

[7] In her report, Dr. Callaway stated that, based on the toxicology report and Gorman's self-report, Gorman likely used methamphetamine within one to two days prior to the offense. Dr. Callaway's report stated:

> It is my opinion, with a reasonable degree of psychological certainty, that she was most likely experiencing substance-induced psychosis and/or the residual effects of this substance. It is also my opinion that she did not meet criteria for a mental disease or defect (e.g., Schizophrenia or Bipolar Disorder) and she could appreciate the wrongfulness of her actions during the alleged offense.

> Although the toxicology report indicated she was not acutely psychotic, she was likely experiencing the residual effects and/or withdrawing from this substance. Officers observed that Ms.

Gorman seemed impaired and observed that she had slow speech, poor balance, she was closing her eyes while talking, and she did not know the date. Therefore, her behavior and thinking during the alleged offense was likely influenced by her recent use of and/or withdrawal from this substance.

Although possible, it is unlikely that she was experiencing symptoms of a mental illness. Ms. Gorman has no prior history of a diagnosis of psychosis. She reported one prior incident when she experienced "a full blown hallucination," but it is unclear if she was under the influence of illicit substances at that time. During this evaluation, she showed no overt signs of a mental illness and she was not taking psychoactive medications.

*Id.* at 136. Dr. Callaway concluded:

Regarding sanity, it is . . . my opinion that [Gorman] was most likely experiencing substance-induced psychosis and/or the residual effects of methamphetamines at the time of the alleged offense. It is my opinion that she did not have a mental disease or defect that rendered her unable to appreciate the wrongfulness of her actions during the alleged offense.

*Id.* at 136-137.

[8] At trial, Dr. Parker testified that based on his examination and the sources he reviewed, it was his opinion that Gorman did not appreciate the wrongfulness of her actions at the time. Dr. Parker indicated that the toxicology report showed a presence of a certain level of methamphetamine and amphetamine in Gorman's blood and he wrote his report prior to having knowledge of the lab report results. He also testified that Gorman's psychosis persisted longer than her intoxication and he "chose to call it unspecified psychosis," that "[y]ou

could make an argument that it could be called psychosis due to use of methamphetamine. It's describing the same situation," that "[e]verybody is different. Their tolerance, there's the way people react to drugs. It varies," and "I made a decision that I thought after two days it was no longer directly due to the intoxication." Transcript Volume II at 82.

[9] Dr. Callaway testified that she concluded "that the impairments that were going on were related to her recent drug use. Residual effects of that," "she didn't have a mental disease or defect at that time," and "she could appreciate the wrongfulness of her actions." *Id.* at 86. Dr. Callaway also testified she reviewed Gorman's history of symptoms and concluded there was no indication she had a severe mental illness, and that her symptoms on the day of the incident related to her substance use.

[10] In closing, the prosecutor argued "[w]e have multiple conclusions," "[o]ne doctor says that this was the effect of methamphetamine," and "[t]he other doctor says it was an unspecified psychosis. However, in doing that he also indicated that . . . the secondary factor psychosis is methamphetamine use." *Id.* at 100. Gorman's defense counsel argued in closing that Gorman had proven insanity by a preponderance of the evidence by Dr. Parker's testimony and "[o]bviously the Court has to determine which expert witness is more reliable." *Id.* at 101. Defense counsel also argued Dr. Parker is a medical doctor who had done over two thousand forensic interviews.

[11] The trial court heard Dr. Parker's statement, when asked to distinguish between an unspecified psychosis and substance abuse induced psychosis, that "you can call this methamphetamine induced psychosis," and it stated that "[s]o with that respect he was kind of agreeing with Dr. Callaway." *Id.* at 103. The court found that it was "going to weigh toward Doctor Callaway's report and find [Gorman] did not meet the burden of showing insanity at the time of the offense by a preponderance of the evidence." *Id.* at 103-104. It found Gorman guilty of resisting law enforcement as a level 6 felony under Count I and operating a vehicle with a schedule I or II controlled substance or its metabolite in her body as a class C misdemeanor under Count III and found her not guilty of operating a vehicle while intoxicated under Count II. The court sentenced Gorman to 730 days with 612 days suspended to probation for her conviction under Count I and to 118 days for time served for her conviction under Count III, to be served concurrently. The court also stated that it would reduce the level 6 felony under Count I to a misdemeanor if Gorman did everything she was supposed to do, mainly a substance abuse evaluation and treatment.

## *Discussion*

[12] The issue is whether there is sufficient evidence to support the trier of fact's rejection of Gorman's insanity defense.[1] When reviewing a trier of fact's verdict which rejected the defense of insanity, we will not reweigh evidence,

---

[1] Gorman does not challenge her conviction for operating a vehicle with a schedule I or II controlled substance or its metabolite in her body as a class C misdemeanor under Count III.

reassess witness credibility, or disturb reasonable inferences made by the trier of fact. *Robinson v. State*, 53 N.E.3d 1236, 1240 (Ind. Ct. App. 2016) (citing *Myers v. State*, 27 N.E.3d 1069, 1074 (Ind. 2015)), *trans. denied*. A finding that a defendant was not insane at the time of the offense warrants substantial deference from reviewing courts. *Id.* Thus, when a defendant claims that an insanity defense should have been successful, the conviction will be set aside only "when the evidence is *without conflict* and leads only to the conclusion that the defendant was insane when the crime was committed." *Id.* (citation omitted).

[13] Gorman contends that she was unable to appreciate the wrongfulness of her conduct and requests this court to reverse her conviction for resisting law enforcement. She argues that, although the evidence of insanity was not without conflict, she proved by a preponderance of the evidence that she suffered from a mental disease, defect, or unspecified psychosis which was not the result of voluntary intoxication. She argues that her methamphetamine use was secondary to psychotic impairment because her use two days prior was far enough out that she was no longer intoxicated, and her psychosis persisted longer than one would reasonably expect intoxication to last.

[14] The State argues that Dr. Callaway's testimony was unequivocal, finding that Gorman's behavior the day of the offense was due to an isolated incident of the effects of methamphetamine use, and that consequently Gorman's mental state was due to voluntary intoxication and she was able to appreciate the wrongfulness of her actions. The State also argues that Dr. Parker's conclusion

that Gorman was insane at the time of the offense was equivocal at best and that Dr. Parker testified there was a fine line between unspecified psychosis and substance abuse induced psychosis and that everyone has a different tolerance. The State maintains the evidence does not lead to the single conclusion that Gorman was insane when she committed the offense.

[15] To be convicted of a criminal offense, the State must prove each element of the offense beyond a reasonable doubt. *Robinson*, 53 N.E.3d at 1241 (citing *Myers*, 27 N.E.3d at 1074-1075 (citing Ind. Code § 35-41-4-1(a))). Criminal responsibility can be avoided if the defendant can successfully raise and establish the "insanity defense." *Id.* (citing *Myers*, 27 N.E.3d at 1075). To successfully assert this defense, an individual must prove by a preponderance of the evidence: (1) that he or she suffers from a mental illness and (2) that the mental illness rendered him or her unable to appreciate the wrongfulness of his or her conduct at the time of the offense. *Id.* (citing *Myers*, 27 N.E.3d at 1075). Thus, proof of mental illness alone is insufficient. *Id.*

[16] Gorman asserted an insanity defense, and the court rejected it and found her guilty of resisting law enforcement. Ind. Code § 35-41-4-1(b) provides that "the burden of proof is on the defendant to establish the defense of insanity (IC 35-41-3-6) by a preponderance of the evidence." Ind. Code § 35-41-3-6(a) provides that "[a] person is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense." Ind. Code § 35-41-3-6(b) provides that "mental disease or defect" means "a severely abnormal

mental condition that grossly and demonstrably impairs a person's perception, but the term does not include an abnormality manifested only by repeated unlawful or antisocial conduct." "It is for the trier of fact to determine whether the defendant appreciated the wrongfulness of his conduct at the time of the offense." *Robinson*, 53 N.E.3d at 1241 (citing *Myers*, 27 N.E.3d at 1075 (citing *Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004))). The defendant is in the position of having to appeal a negative judgment. *Id.* "A reviewing court will reverse only when the evidence is without conflict and leads only to the conclusion that the defendant was insane when the crime was committed." *Id.* (citing *Myers*, 27 N.E.3d at 1075). The reviewing court will not reweigh the evidence or assess the credibility of witnesses but will consider only the evidence most favorable to the judgment and the reasonable and logical inferences to be drawn therefrom. *Id.*

[17] "In addition, mental disease or defect, for purposes of the insanity statute, does *not* include temporary mental incapacity that results from voluntary intoxication." *Bloomfield v. State*, 61 N.E.3d 1234, 1238 (Ind. Ct. App. 2016) (internal brackets and quotation marks omitted) (citing *Townsend v. State*, 45 N.E.3d 821, 828 (Ind. Ct. App. 2015), *trans. denied*), *trans. denied*. Ind. Code § 35-41-2-5 provides that "[i]ntoxication is not a defense in a prosecution for an offense and may not be taken into consideration in determining the existence of a mental state that is an element of the offense unless the defendant meets the requirements of IC 35-41-3-5." Ind. Code § 35-41-3-5 states that intoxication is a defense only if the intoxication resulted from the introduction of a substance

in a person's body without the person's consent or when the person did not know that the substance might cause intoxication.

[18] In *Berry v. State*, the Indiana Supreme Court considered whether, considering the evidence most favorable to the trial court's judgment, it was contrary to law for the trial court to have concluded that the defendant's psychotic symptoms were the result of his voluntary abuse of alcohol and not a mental disease or defect. 969 N.E.2d 35, 39 (Ind. 2012). The defendant had been hospitalized multiple times for a combination of symptoms related to his drug and alcohol abuse and bipolar disorder. *Id.* at 36. The Court stated that, when temporary mental incapacity is the result of voluntary intoxication, it does not fit within the definition of "mental disease or defect." *Id.* at 38 (cit*ing Jackson v. State*, 273 Ind. 49, 52, 402 N.E.2d 947, 949 (1980) ("Temporary mental incapacity, when induced by voluntary intoxication, normally furnishes no legal excuse for, or defense to, a crime.")). The Court further stated that, on the other hand, Indiana recognizes situations where "the ingestion of intoxicants, though voluntary, has been abused to the point that it has produced mental disease." *Id.* at 42 (citing *Jackson*, 273 Ind. at 52, 402 N.E.2d at 949). It stated that "[t]his type of mental disease is now commonly referred to as 'settled' or 'fixed' insanity" and that "[i]n cases where a defendant's conduct is caused by his or her 'settled' or 'fixed' insanity, the defendant would be able to meet the mental-disease prong of Indiana's insanity statute." *Id.*

[19] The *Berry* Court observed that the expert witnesses disagreed as to what caused the defendant's behavior, with two experts attributing his behavior to his

bipolar disorder and a third expert opining that the defendant's symptoms were caused by the voluntary abuse of alcohol and not his bipolar disorder. *Id.* The Court also noted that none of the experts suggested that the defendant suffered from settled or fixed insanity and that in fact all of the experts ruled out "delirium tremens," a type of settled insanity caused by the chronic abuse of alcohol. *Id.* The Court observed:

> The intersection of voluntary intoxication and insanity is murky at best. Certainly, not all chronic alcoholics have destroyed their mental faculties to the point where they suffer from a mental disease as defined in Indiana's insanity statute. On the other hand, consumption of alcohol prior to committing an offense does not automatically rule out the insanity defense, as the underlying cause of a defendant's behavior could be a mental disease. Ultimately, it is for the trier of fact to determine whether the accused's conduct was the result of a diseased mind—regardless of the source of the disease—or was the result of voluntary intoxication.

*Id.* at 42-43 (citations and quotation marks omitted). The Court noted that, while one of the expert witnesses could not give an exact label to the defendant's condition, the expert did conclude that the defendant's behavior was caused by his voluntary abuse of alcohol. *Id.* at 43. It held that the trial court, as the trier of fact, was within its province to accept the expert's testimony at trial, draw reasonable inferences from it, and discredit conflicting testimony. *Id.* It held that a reasonable inference from the expert's detailed testimony on the subject was that the defendant's behavior was due to either voluntarily induced alcohol intoxication or voluntarily induced alcohol

withdrawal. *Id.* The Court also noted that the lay testimony regarding the defendant's post-intoxication behavior buttressed the expert's conclusions. *Id.* It noted the highly deferential standard of review and affirmed the trial court's rejection of the defendant's insanity defense. *Id.* at 43-44.

[20] Here, the court was able to consider the testimony of the officers and the testimony of Dr. Parker and Dr. Callaway, each of whom were questioned by the court and the parties. Gorman does not argue that Dr. Parker or Dr. Callaway concluded that she suffered from settled or fixed insanity caused by the chronic use or abuse of alcohol or drugs. To the extent reasonable minds could interpret a conflict in the evidence regarding Gorman's sanity at the time of the offense, the trial court as the trier of fact could determine based upon the expert testimony presented that Gorman did not establish by a preponderance of the evidence that she was unable to appreciate the wrongfulness of her conduct of resisting law enforcement at the time of the offense, and "it is not the role of the court on appeal to reweigh the evidence presented at trial and make a determination as to which of those inferences the trial court should have made." *Robinson*, 53 N.E.3d at 1242 (citing *Myers*, 27 N.E.3d at 1078).

[21] Based upon the record and our highly deferential standard of review, we conclude that the trial court made a reasonable inference that Gorman was able to appreciate the wrongfulness of her conduct at the time of the offense and to reject her insanity defense. *See Bloomfield*, 61 N.E.3d at 1238-1240 (holding, where the defendant argued that his conduct was not the result of voluntary intoxication but rather the result of mental degeneration caused by his long-

term abuse of Xanax and Spice, that the defendant was clearly suffering from the withdrawal of Xanax and Spice, it was for the jury to determine whether the accused's conduct was the result of a diseased mind regardless of the source of the disease, and that there was sufficient evidence from which the jury could reject the defendant's argument that his conduct was the result of a mental disease or defect), *trans. denied*; *Lawson v. State*, 966 N.E.2d 1273, 1279-1283 (Ind. Ct. App. 2012) (holding that the jury was free to credit the opinion of one expert over the other expert and that there was sufficient evidence to support the jury's rejection of the defendant's insanity defense), *trans. denied*.

## Conclusion

[22] For the foregoing reasons, we affirm Gorman's conviction for resisting law enforcement as a level 6 felony.

[23] Affirmed.

May, J., and Pyle, J., concur.