CROMER ET AL. *v.* BRIDENBAUGH ET AL.

[No. 23,147. Filed April 24, 1919. Rehearing denied June 26, 1919.]

1. DRAINS.—*Construction.—Making Old Drain Part of New.— Sufficiency of Report.—Petitioners' Theory.—Effect on Appeal.* —Where a proceeding for the construction of a drain in the course of an old dredged ditch was dismissed on the ground of remonstrance that the work as reported was insufficient, and the record shows, by statements of the court and the petitioners' counsel, that the cause was tried on the theory that the report called for a new tile drain supplanting the old ditch, the petitioners' contention on appeal that, though the tile as specified would be insufficient, there were sufficient specifications reported to show that the new drain was to be supplemental to the old and that the latter was to remain open as it was at the time of the filing of the report, is of no avail; especially is this true where the record shows that such specifications relied upon by the petitioners were either required by statute, or were necessary, for proper construction of a new drain, and that the old ditch, through neglect, had become full in places and had no definite channel, but that no specifications were reported for its improvement, since under such circumstances the law would not permit the old ditch to remain an open channel without definite specifications as to its width, depth and slope. pp. 395, 396.

2. DRAINS.— *Commissioners' Report.— Dismissal.— Amendment.* —Where a drainage proceeding was dismissed on the ground that the proposed work as reported by the commissioners was insufficient to drain the land, a request to amend the report, made twenty-three days after dismissal, was too late. p. 398.

3. DRAINS.—*Commissioners' Report.—Sufficiency.—Amendment.* —Where a report of drainage commissioners called for construction of a new tile drain in the course of an old dredged ditch that was full in places and had no definite channel, and the court found that the proposed work as reported was insufficient, a request to amend the report so as to permit the old ditch to be left open as it then was as part of the new drain, without specifications as to its width, depth and slope, was too indefinite. p. 399.

4. EVIDENCE.—*Expert Testimony.—Knowledge.*—Witnesses who had any knowledge relative to the sufficiency of a proposed drain were properly permitted to testify as experts, the extent of their knowledge being a question of the weight, and not of the admissibility, of their testimony. p. 399.

5.  EVIDENCE.—*Expert Testimony.*—*Drains.*—In the trial of a remonstance to a drainage proceeding, the exclusion of the testimony of a commissioner, who was not familiar enough with his own report to know the sizes of the tile provided for therein, was not error, since the report itself was in evidence and in that the witness had given his verified opinion as to the efficiency of the proposed drain.  p. 399.

From the Pulaski Circuit Court; *W. C. Pentecost,* Judge.

Proceedings by Jacob Cromer and others for the construction of a drain, in which Otto Bridenbaugh and others filed remonstrance.  From an order dismissing the proceedings, the petitioners appeal.  *Affirmed.*

*Reidelbach & Reidelbach, John M. Spangler* and *Myers, Gates & Ralston,* for appellants.

*Long, Yarlott & Souder, Horner & Thompson* and *James W. Noel,* for appellees.

TOWNSEND, J.—Appellants filed their petition in the Pulaski Circuit Court for an open dredged ditch.  This ditch lies wholly within the county.  Commissioners were appointed and made their report.  They afterwards amended this report.  The cause was tried and proceedings dismissed on the tenth statutory ground of remonstrance to the amended report.  Acts 1907 p. 508, §4, §6143 Burns 1914.  The trial court construed the commissioners' report to provide for an underground tile drain in the main ditch from station 0 to station 226 plus 74 feet.

It transpires from the evidence that this main ditch, all but about a mile at the upper end thereof, lies in the channel of an old dredged ditch that was constructed in 1897, commonly known as Mud Creek.

It is appellants' contention that they should not have been defeated on this cause of remonstrance, for the reason that the report of the commissioners con-

templated that Mud Creek should be left open as it was at the time of the filing of the report.

The report provided that in this main ditch from stake "0" to 30 there should be a 10-inch tile; from stake 30 to 75 there should be a 12-inch tile; from stake 75 to stake 100 there should be a 14-inch tile; from stake 100 to 144 there should be a 16-inch tile; from stake 144 to stake 226 plus 74 feet there should be a 24-inch tile; from stake 226 plus 74 to stake 243 to be an open ditch.

Appellants seem to admit that, under the evidence, a 24-inch tile would not be sufficient for the drainage in question, unless Mud Creek is left open above the tile.

There were numerous branches leading into this main ditch, and the proposed drainage was to take care of about 2,000 acres; but appellants claim that there is sufficient in the report to show that the drainage commissioners intended that Mud Creek should remain open to take care of overflow waters. They base this contention upon the proposition that the report of the commissioners provided for a concrete bulkhead at station 226 plus 74 feet, which was concave at the top, being twelve feet high at the ends and seven feet high in the center, to conform to the bottom of the old ditch, Mud Creek; also on the proposition that the tile were to be covered level with the bottom of Mud Creek; also on the proposition that the report required the contractor to remove all trees and shrubs to a distance of twenty-five feet on each side of the drain.

When the first witness was put upon the stand by the remonstrators, in the course of his examination a controversy arose between counsel, on an objection, as to the relation that the proposed tile drain sustained to Mud Creek, remonstrators' attorney asking the witness concerning the cleaning of Mud Creek. Whereupon the trial court remarked: "What

has the cleaning of Mud Creek got to do with it?" And shortly thereafter, attorney for the petitioner added to the objection to the question the following: "I want to add an objection that the proposed ditch is a new ditch." Thus it is seen that at the very outset of the trial the court indicated his view of the commissioners' report and counsel for the petitioners adopted that view in this objection. It will hardly do to say that petitioners tried this cause on the theory that this tile drain was supplemental to Mud Creek; or that Mud Creek was to remain as an adjunct to this drain. It seems quite apparent from the record that the case was tried on the theory that this was a new system of drainage completely supplanting the old dredged ditch that was constructed in 1897, which the evidence showed was tramped full, in places and had grown up to grass and weeds and brush, had no definite channel. In some places it was very wide and very shallow, in other places quite deep, varying from a few inches in depth to several feet in depth, and varying in width from a few feet to from twenty-five to thirty feet at different points.

It seems from the record that petitioners were proceeding upon the theory that the report called for a tile drain down to station 226 plus 74 feet, and that 1. this drain was to completely supplant the old open ditch; that only after they were met by evidence that the 24-inch tile would not take care of the drainage, did they conceive the idea that Mud Creek should be left open as an overflow channel. But however this may be, it is not their contention that Mud Creek should be left open according to the old specifications made in 1897, but that it is to be left open as it was at the time that the drainage commissioners made the report. But nowhere in the report of the drainage commissioners is there any specification as to the width

or the depth, or the slope of the banks of Mud Creek as it now is. So that whatever the theory of the petitioners was on the trial of this cause, it seems to us, under the statute, of little consequence; because it cannot be conceded that the law would permit the condition of Mud Creek, as an open channel, to be left in the waste basket of memory and not require it to be made definite and certain as to its width and depth and slope. Those who were required to keep it in the condition that it was at the time of the commissioners' report should have something to which they might refer to find out what the specifications were.

Appellants' contention about the bulkhead being concave and conforming to the bottom of Mud Creek, and the other two contentions that we have set out about the grubbing of the shrubs and removing of the trees to a distance of twenty-five feet, and the covering of the tile up to the bottom of Mud Creek, are not sufficient to authorize the interpretation of this report that Mud Creek was to remain an open ditch. If the commissioners intended any such thing, they intended something that could not be done under the law, and something that would be utterly impossible because there would be no record anywhere to disclose the then dimensions of Mud Creek. The concave bulkhead was evidently designed to take care of flood waters during the time of the construction of this tile drain. Tile ditch construction begins at the lower end thereof. If this bulkhead were not concave, it would operate as a dam to Mud Creek, and would seriously interfere with digging the ditch and putting in the tile, in case of heavy rains.

So far as the other claim of appellants is concerned, about grubbing out the trees and taking out the shrubs, the commissioners simply took this from the statute it-

self, which requires that in the construction of a tile drain all shrubs and trees shall be removed on each side of the drain to a distance of 25 feet. §6142 Burns 1914, Acts 1907 p. 508, §3. The purpose of this, of course, is to keep the roots from filling up the tile and blocking and destroying the drainage. This provision of the report, instead of indicating that Mud Creek was to be left open, rather indicated that it was to be plowed full and farmed over by the adjoining landowners, when the tile was once in. Appellants also say in this connection that, because the specifications require the contractor to cover the tile even with the bottom of Mud Creek, therefore Mud Creek was to be left open. This presents the rather anomalous situation of putting in a 24-inch tile, say at a point where the tile is four feet below the bottom of Mud Creek, and still have two feet of earth left in the bottom of Mud Creek after the tile was covered up to the level of the bottom. Thus this very construction would throw two feet of earth into the bottom of Mud Creek and leave it there. All the lateral branches of this main drain that were provided for in the commissioners' report required the covering of the tile to the depth of two feet only, leaving it to the adjoining landowners to fill in the rest of the dirt. It would seem as consistent for appellants to contend that these lateral branches should be left open, except the two feet filled in by the contractor, as it is for them to contend that Mud Creek should be left open because of the provision that the tiles should be covered only to the level of the bottom of Mud Creek.

Because the court found on the evidence that the proposed work as decided upon and reported by the commissioners was not sufficient to properly

2. drain the land to be affected, the petition was dismissed. Twenty-three days after the judgment

dismissing the petition, appellants asked that the commissioners be permitted to amend their report to provide that Mud Creek should remain open. If this provision had been in the original report, appellees would have had the right to contest the provision under the eighth statutory ground of remonstrance that the expense exceeded the aggregate benefits. §6143 Burns 1914, *supra.* This proposed amendment to the report, even if it had been timely, is subject to the infirmity that no specifications are offered as to the width, depth, slope or condition of the Mud Creek channel. The proposed amendment came too late and was too indefinite, had it been timely.

Appellants also complain that the court permitted four witnesses, put upon the stand by remonstrators, to testify as experts on the subject of whether the 24-inch tile would drain the land. Appellants' contention about these witnesses goes rather to the weight of their evidence than to its admissibility. It is claimed by the appellants that they did not show sufficient familiarity with the drainage in question to testify as experts. If they had any knowledge of the subject about which they were talking, it was proper for the trial court to hear them. It may be that the testimony offered had little weight, but this did not preclude its being admitted. They also complain because the court excluded the testimony of one of the drainage commissioners which they offered in rebuttal. It appears that this commissioner was not familiar enough with his own report to know the sizes of the tile provided for therein. It was not error to exclude his evidence. The report itself was in evidence, signed and sworn to by him, and in that he had given his opinion as to the efficiency of the proposed drainage. The trial court was correct in his construction of the commissioner's report, and the finding of the court is

not contrary to law, and is sustained by sufficient evidence.

The judgment is therefore affirmed.

NOTE.—Reported in 123 N. E. 115.