## HUBBLE, ADMR. v. BROWN.

[No. 28,500. Filed April 5, 1949.]

*Leo L. Kriner,* of Indianapolis, *Charley H. Foley,* of Martinsville, for appellant.

*Bingham, Cook & Bingham,* of Indianapolis, *Homer Elliott,* of Martinsville, for appellee.

YOUNG, J.—Henry Hubble and Daisy Irene Hubble for many years prior to Mrs. Hubble's death on September 21, 1945, lived on Churchman Avenue, about a mile east of the town of Beech Grove, Indiana, which is a suburb of Indianapolis. It was the custom of Mrs. Hubble occasionally to shop in Indianapolis and, in doing so, she would travel by bus from Beech Grove to Indianapolis and return. There was no public transportation between Beech Grove and her home and she would walk this part of the trip, except when she was picked up by persons in automobiles going in the same direction she was.

On September 21, 1945, she made one of her occasional trips to Indianapolis. On her return from Indianapolis she carried a number of packages and started to walk from Beech Grove to her home. She was overtaken by appellee at a point which a jury might have believed was anywhere from a city block to a quarter of a mile from her home. Appellee was driving a truck in the same direction she was going on Churchman Avenue and stopped and she entered the cab of the truck with him. He did not stop at her home but drove on past to Arlington Avenue, where he turned south. One witness, a Mr. Cold, testified that he followed appellee's truck along Churchman avenue and into Arlington ave-

nue and attempted to pass it, but that it was weaving from one side of the road to the other and he had difficulty in driving around it. He finally succeeded in passing it and said that at the time he passed it appellee was going 30 to 35 miles an hour. At the time he passed it there were two people in the cab of the truck. He drove on about a mile to his home, stopped at the mail box to get his mail and drove into his driveway. About then appellee drove by, going close to 50 miles an hour, and at that time there was only one person in the cab of the truck.

As appellee was driving south on Arlington avenue, he passed the home of Mr. and Mrs. Volrath, which was three or four blocks south of where Mr. Cold passed him. At 35 miles per hour he would have driven this distance in a minute or less. Mrs. Volrath testified that she saw the truck coming down the road "at a very rapid pace and there was something flew out of the front end of the car and I ran to the road and Mrs. Hubble was lying there in the road unconscious." She said she saw the truck "whisk past," and that the truck just "flew past." When asked, "Where does a rapid rate of speed begin in your judgment in miles per hour?" she answered, "Well, if you can just barely see the thing go past you know they are going at a very rapid speed then." Her husband testified that he heard a car "whiz past at a very rapid rate of speed," but did not see anything happen. Both testified that the truck did not stop. The Volraths ran to the road where Mrs. Hubble lay. They called the sheriff and he called an ambulance, but Mrs. Hubble died without regaining consciousness before the ambulance arrived.

It is clear from the evidence that appellee was very drunk when he picked Mrs. Hubble up and drove her to the place where she afterwards was found. During

part of the afternoon on the day of Mrs. Hubble's death, he had been about a filling station in Beech Grove. Several witnesses testified he was drunk, that he staggered around and talked loud. He was told by a police officer that he was in no condition to drive his automobile, but at about 4:15 P. M. he left the gas station and drove away in his truck in the direction of the place where he picked up Mrs. Hubble. Deputy sheriffs found him at his home several miles away a little after dark on the evening of the occurrence. He was lying under a bush in his front yard. They pulled him out and tried to talk to him. He staggered and was incoherent and he mumbled and they could not understand what he was trying to say. On the following day he could not remember what took place the day before.

Appellant's complaint in this case was based upon the theory that his decedent was a guest in appellee's car. Under our guest statute appellee would not be liable to appellant unless Mrs. Hubble's death was caused by wanton or willful misconduct of appellee in his operation of the truck. Section 47-1021, Burns' 1940 Replacement. In his complaint appellant brought himself within the language of this statute by alleging that Mrs. Hubble was a guest in appellee's car and that appellee was guilty of wanton and willful misconduct in the operation of his truck in that he was operating it while under the influence of intoxicating liquor and was weaving said truck from one side of the road to another at a high and dangerous rate of speed. Appellant further alleged in his complaint that as a result of such wanton and willful misconduct his decedent fell from said truck onto the pavement resulting in a skull fracture from which she died.

In the trial appellant offered evidence establishing, or tending to establish, all the facts heretofore recited in

this opinion. At the conclusion of appellant's evidence appellee moved the court to instruct the jury to return a verdict for appellee. The court sustained this motion and so instructed the jury, and the question before us is the propriety of such instruction by the court, and this depends upon whether there was any evidence, or any reasonable inference from any evidence, from which a jury could have found that the appellee was guilty of wanton and willful misconduct in the operation of his car and that such wanton and willful misconduct, was the proximate cause of Mrs. Hubble's death.

We find no difficulty in concluding that Mrs. Hubble was a guest in appellee's truck during the time she rode therein on the afternoon of her death. There was evidence that appellee, as he proceeded south on Churchman Avenue, stopped his truck and that Mrs. Hubble entered the truck and drove away with him. There was no evidence that she paid or was to pay for her ride and under all the circumstances the only reasonable inference to be drawn was that she entered the cab of the truck as a guest, within the meaning of our statute. At least that question was for the jury.

Likewise we find no difficulty in concluding that there was evidence from which it reasonably could be inferred that appellee was guilty of wanton and willful misconduct in the operation of his truck during the time Mrs. Hubble was a guest therein on the afternoon of her death. There are cases which hold that if the driving ability of a motorist is, or speedily will be, impaired by intoxicants the motorist is guilty of willful or wanton disregard of the rights of his guests in the automobile. 4 *Blashfield Cyc. of Auto Law and Practice,* 468 (Perm. Ed.) ; *Foster* v. *Redding* (1935), 97 Colo. 4, 45 P. 2d 940, 942; *Schlesinger* v. *Mil-*

*ler* (1935), 97 Colo. 583, 52 P. 2d 402, 404. Other cases hold that in order to show gross negligence or willful, wanton or reckless misconduct within the meaning of the different guest statutes, some other wrongful act or omission, in addition to the intoxication of the driver, must appear, intoxication of itself not being sufficient; but where the driver's intoxication is combined with the operation of the vehicle at a high and excessive rate of speed, or weaving from one side of the road to the other, or other dangerous conduct, the combination is sufficient to warrant the conclusion of gross negligence or willful or wanton misconduct. 4 *Blashfield Cyc. of Auto Law and Practice,* 466, § 2336 (Perm. Ed.) ; *Powell* v. *Berry* (1916), 145 Ga. 696, 89 S. E. 753; *Bertera* v. *Cumeo* (1935), 273 Mass. 181, 173 N. E. 427; *Findlay* v. *Davis* (1933), 263 Mich. 179, 248 N. W. 588. In the case before us, we need only decide that intoxication, accompanied by excessive speed, or weaving from one side of the highway to another, or other similar misconduct, constitutes wanton and willful misconduct. The evidence in the case before us was abundant to establish such combination. We hold, therefore, that there was evidence in this case to send it to the jury upon the question of wanton and willful misconduct.

This leaves the question of whether the evidence of appellee's intoxication, combined with weaving from one side of the road to the other and the speed shown was, under all the facts disclosed by the evidence above recited, sufficient to permit a jury to infer that appellee's conduct was the proximate cause of the occurrence which resulted in Mrs. Hubble's death.

The appellee claims that there was no evidence of what happened to cause Mrs. Hubble to fall from the truck or "fly" from it, as described by one of the witnesses. He says that what happened is a matter of

pure guess or surmise or speculation. He says that the only evidence of the situation at the exact time of Mrs. Hubble's fall was that the truck was going straight south and was not weaving back and forth across the road. Here is the testimony upon which he relies:

Question: "When you saw this truck coming was it going south or north?"

Answer: "South."

Question: "Was it going straight south?"

Answer: "It was going at a rapid speed heading south."

Question: "Straight south?"

Answer: "Yes, sir."

Question: "Did you see any movement of the truck other than its forward movement south of Arlington?"

Answer: "I just saw it as it passed."

We do not construe this testimony as precluding an inference, under all the circumstances described, that the truck was weaving from one side of the road to the other at the time of Mrs. Hubble's fall. The witness gave the general direction of the truck as south, but when asked if there was any other movement of the truck she failed to say there was not. It is not contended that there was no evidence that appellee was weaving from one side of the road to the other only a minute or so before Mrs. Hubble's fall.

In considering the proximate cause of Mrs. Hubble's fall, the jury, in attempting to draw a fair inference as to what actually occurred, would not have been confined to evidence of what some witness saw at the exact second of the accident. In 4 *Blashfield Cyc. of Auto Law and Practice,* § 2323 (Perm. Ed.), at pp. 392, 393, the following language is used with

supporting authority cited: "Whether or not a host has been guilty of willful or wanton misconduct, gross negligence, or other conduct denounced by the various statutes previously discussed, is to be determined from the circumstances of each case, and every act or omission entering into the particular happening must be considered in connection with all other circumstances. It is not necessary that any single circumstance should in itself afford a basis for the conclusion that the host's conduct has been of the kind condemned by the law, but it is sufficient if such a conclusion is warranted by a combination of circumstances."

In *Pierce* v. *Clemens* (1943), 113 Ind. App. 65, 77, 46 N. E. 2d 836, 841, in considering the question of liability in a guest case, our Appellate Court, speaking by Draper, J., used the following language: "Our courts in determining whether one has been guilty of wanton or willful misconduct have considered the 'course of conduct' involved and have not confined their inquiry to occurrences at the immediate time and place of the accident. *Armstrong* v. *Binzer* (1936), 102 Ind. App. 497, 199 N. E. 863; *Kahan* v. *Wecksler* (1938), 104 Ind. App. 673, 12 N. E. 2d 998 . . ."

It would seem, therefore, that in considering such case as we have before us, we not only may take into account, but should take into account and consider, the complete course of conduct of the defendant and the combination of circumstances shown by the evidence, and should not be required to limit our consideration to evidence of the exact facts existing at the exact moment of the occurrence complained of. It is true that there was no direct evidence of why Mrs. Hubble fell or "flew" from appellee's truck. There was, however, evidence that appellee was very intoxicated and that only a minute or so before he had

been weaving from one side of the road to the other. There was no evidence that he had discontinued that course of conduct. There was evidence that he "whisked" by the place of the accident at a high rate of speed. From this combination of circumstances, and considering his entire course of conduct, there was evidence from which a jury reasonably could have inferred that Mrs. Hubble was thrown out of appellee's truck by its speed and swerving from one side of the road to the other, or that she leaped from the truck to escape feared peril from appellee's conduct. Where conduct of one places another in sudden peril such conduct is deemed the proximate cause of an injury to a person thus imperiled sustained in an effort to escape from the danger. 38 Am. Jur. Negligence, § 76, pp. 735, 736, and § 77 and cases cited in Notes 15 and 17 on p. 737. When more than one inference properly may be drawn from the evidence it is proper to leave the choice of conflicting inferences to the jury. *Metropolitan Life Ins. Co.* v. *Glassman* (1946), 224 Ind. 641, 645, 70 N. E. 2d 24; *Illinois, etc. R. Co.* v. *Cheek* (1899), 152 Ind. 663, 677, 53 N. E. 641. *The Cleveland, etc. Railway Co.* v. *Moneyhun, Guardian* (1896), 146 Ind. 147, 153, 44 N. E. 1106; *Supergear Drive, Inc.* v. *Hollister-Whitney* (1946), 327 Ill. App. 414, 64 N. E. 2d 672, 673. The case should have been submitted to the jury on the question of proximate cause as well as on wanton and willful misconduct.

It is suggested that other explanations of the occurrence are possible and that if the case had gone to the jury its verdict would necessarily have been based on guess, speculation and surmise. This is not sound because there is no evidence, direct or circumstantial, from which any other cause for Mrs. Hubble's fall could reasonably have been inferred. There

are few cases where, if attention is allowed to stray from the evidence and the imagination is allowed to run riot, there may not be conflicting theories of how and why any given occurrence happened. But because a jury may guess and speculate outside the evidence, is not grounds for instructing a jury to return a verdict for the defendant when there is evidence from which a reasonable inference may be drawn in favor of the plaintiff.

The judgment is reversed, with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 84 N. E. 2d 891.