**Arlo D. MARTIN, Appellant (Defendant Below),**

v.

**Mary ROBERTS, Appellee (Plaintiff Below).**

**No. 2–1281A418.**

Court of Appeals of Indiana, Second District.

Aug. 10, 1983.

Rehearing Denied Oct. 6, 1983.

Herbert A. Spitzer, Jr., Phillip E. Stephenson, Marion, for appellant.

Richard E. Sisson, Marion, for appellee.

SHIELDS, Judge.

Arlo D. Martin (Martin) appeals the entry of judgment against him in favor of Mary Roberts (Roberts) upon her claim for personal injuries she sustained while riding in a dune buggy driven by Martin. Because of our resolution of this case, we consider only the following issue:

> Was the opinion testimony of state trooper Ronald Brown regarding the speed of the dune buggy at the time of the accident properly admitted?

We reverse.

On June 28, 1975, Roberts and three other persons were passengers in Martin's dune buggy. The dune buggy consisted of a home-built fiber glass "kit" body mounted on a Volkswagen Bug chassis. While driving down a blacktop country road, Martin's right tires dropped off the side of the pavement. He over-corrected and crossed the road diagonally, veering to the left. The left rear wheel of the dune buggy snagged on a telephone pole guy wire. The dune buggy stopped suddenly, catapulting the passengers from the vehicle. The abrupt stop also caused the fiber glass body to detach from the chassis.

Roberts sustained severe injuries in the wreck. She filed suit against Martin alleging he had engaged in wanton and willful misconduct while driving.

At trial evidence showed Martin's blood-alcohol content measured .12% on a breathalyzer machine. Nevertheless, his passengers, including Roberts, testified Martin's driving was neither impaired nor fast. Martin's wife estimated his speed at the

time of the accident at around 35 miles per hour.

State Trooper Ronald Brown (Brown) arrived at the scene following the accident. He was allowed to testify, over objection, that in his opinion the speed of the dune buggy was 65 miles per hour at the time of the accident. His was the only testimony placing Martin's speed above the legal limit of 55 miles per hour at the accident scene.

The jury found for Roberts and awarded her $175,000 in damages. The trial court entered judgment in that amount. Martin's motion to correct errors was denied and this appeal followed.

## DECISION

Our supreme court has observed care must be taken in allowing the admission of expert opinion evidence, particularly if it is of a technical nature:

"[A]s the subject of inquiry becomes more technical, involved, or scientific, the trial court, within whose reasonable discretion is the determination of the qualifications of a witness, should exercise greater care in ascertaining that an offered witness is in a position to throw light on the question."

*New York Life Insurance Co. v. Kuhlenschmidt,* (1941) 218 Ind. 404, 33 N.E.2d 340, 348–49.

■ To qualify a witness as an expert, two requirements must be met:

"1) the subject of the inference ... [is] so distinctly related to some science, profession, business or occupation as to be beyond the ken of laymen.....
[Second, there must be a showing] the witness ... [has] sufficient skill, knowledge or experience in that field as to make it appear that his opinion or inference will probably aid the trier in his search for the truth."

*Davis v. Schneider,* (1979) Ind.App., 395 N.E.2d 283, 290. Furthermore, a proper factual foundation must be laid. "Such foundation includes ... the introduction of sufficient facts upon which an expert can base an opinion." *Davis,* 395 N.E.2d at 290.

Thus, besides the showing of the "need" for an expert opinion, the foundation for the admission of expert opinion evidence includes:

1) evidence of the witness' knowledge of and/or skill or experience with the scientific, business or occupational formula, theorem, rule, standard, calculation, etc. that provides the sought after expert opinion and

2) evidence of sufficient known quantities in the particular cause to which the scientific, business or occupational formula, theorem, rule, standard, calculation can be applied.

An example of this process is found in *Shelby National Bank v. Miller,* (1970) 147 Ind.App. 203, 259 N.E.2d 450. In *Miller* in an offer to prove the proffered expert was first asked to describe the scientific methods for determining the speed of a vehicle. He then explained the method of making the calculation. This information provides the trial judge with the information necessary for the judge to exercise his discretion in ruling upon the admissibility of the proffered evidence.

Thus, in *Posey County v. Chamness,* (1982) Ind.App., 438 N.E.2d 1041, this court, in affirming the trial court's exercise of its discretion in refusing to permit expert opinion testimony, stated:

"The mere fact that a witness is a police officer does not qualify him to testify as an expert upon the speeds of motor vehicles. *McCraney, supra.* In *McClure v. Austin,* (1972) 152 Ind.App. 398, 283 N.E.2d 783, the court held that the refusal to permit a retired state trooper to give an opinion as to the speed of a vehicle when the accident occurred was not an abuse of discretion even though the officer had investigated some 3,000 accidents during his 30-year tenure as a police officer, had attended certain traffic schools, and was qualified to testify as an expert accident reconstructionist.

"In the case at bar, on leave to ask Winkleman some preliminary questions regarding his training and qualifications in accident reconstruction, Winkleman

admitted that he had not determined several important factors in arriving at an opinion of the vehicles's rate of speed prior to impact. Winkleman had not considered the weight and load of the automobile, the degree of inclination of the road and the drag factor of the roadway.

. . . . .

"Here, the trial court did not abuse its discretion in not permitting Winkleman to answer the question since the evidence shows that Posey failed to properly establish the qualification of Winkleman as an expert witness."

438 N.E.2d at 1045–46 (footnote omitted).

This foundational requirement was also recognized in *McCraney v. Kuechenberg*, (1969) 144 Ind.App. 629, 634–35, 248 N.E.2d 171, 174 wherein we said:

"The question posed to the witness here did not include sufficient physical facts to justify an opinion as to speed by any non eye-witness, expert or otherwise. Nor did the prior evidence establish such physical facts.

"In the case before us the witness' testimony prior to the proffered opinion dealt with his knowledge subsequent to the accident concerning weather and road conditions, degree of darkness, presence of skid marks and debris, distance from such debris where the automobile was found at rest, the apparent distance that plaintiff-appellant's ward was thrown by impact and the portions of the vehicle which were damaged.

"There are other relevant factors indispensable here to a probative opinion on speed. Such factors may include, but are not necessarily restricted to, the weight and load of the vehicle as well as its condition and that of its brakes and tires. *See Whittaker v. VanFossan*, [ (4th Cir. 1961), 297 F.2d 245] *supra*, and *Ross v. Newsome*, [ (5th Cir.1961), 289 F.2d 209] *supra*. Even if the officer were competent to render an opinion as to speed such opinion would not be admissible if he failed to take into account every factor essential to the formulation of that opinion. The specific question posed to the

officer here, even when coupled with his prior testimony, lacked the requisite physical elements of foundation to allow *any* opinion, expert or otherwise concerning speed."

The party offering the expert witness has the burden of establishing the qualifications of the expert. *McCraney*. It is not the burden of the adversary to prove the proffered expert witness is not qualified. *Chamness*, 438 N.E.2d at 1045. We review the trial court's ruling on the proponent's affirmative burden using the abuse of discretion standard. *McCraney*.

In this case, we, as do the parties, assume the inquiry is beyond the ken of lay persons. Nevertheless, we find the trial court abused its discretion in admitting the opinion testimony of the state trooper regarding the speed of the dune buggy because Roberts failed to offer evidence of the officer's knowledge of and/or skill or experience with a scientific or occupational formula, calculation, etc. that would provide the sought after opinion, *i.e.* speed of the Martin vehicle, and failed to offer evidence of the existence of sufficient known facts for application of the scientific or occupational formula, calculation, etc.

The data upon which Brown relied in formulating his opinion of speed consisted, in essence, of his estimated distance of the debris and the passengers from the chassis and the amount and nature of the damage to the fiber glass body and chassis, including the forward displacement of the rear seat and steering wheel. These data were significant to him because they indicated an amount of "immediate force" in view of "[n]o more of an object than the vehicle struck, just striking a guy wire with a rear wheel, there was considerable amount of damage." Record at 853.

Brown gave the following testimony about his training:

"Q. Can you state what that training was?

A. The initial training would have been at the Indiana State Police Academy in Bloomington where we re-

ceived training from Northwest Traffic Institute which sent personnel down as to the investigation part, measuring skidmarks, physical evidence at the scene, determining and estimating speed, determining who was at fault. Whether it was equipment or what; determined what the cause of the accident was and just make a report.

Q. In other words, part of your purpose as a state trooper in making an accident investigation was to determine why the accident occurred, is that the . . . correct?

A. That was the whole point of the investigation, yes.

Q. Uh, you've named several factors that come . . . become involved in your . . . your investigation and in your training. The skidmarks, damage to a vehicle, items of this nature, is that correct?

A. Yes, sir.

Q. Did you receive training in all those areas?

A. Yes, sir. We did.

Q. O.K. Were . . . did your training extend to the . . . the point of actually investigating manufactured accidents so to speak?

A. Yes, sir.

. . . .

A. The Indiana State Police has an annual four day seminar held somewhere within the state where we at that time reviewed different things that had come up. More or less a refresher course. Anything new that had come up, we were also refreshed and brought up to date.

Q. That included traffic laws and road conditions?

A. Right. All . . . all aspects of law enforcement.

Q. I assume this would include training films of some sort from time to time?

A. We had training films. I assume you're asking about accidents. Dealing with collisions. Showing different things you should look for as far as damage.

Q. Would this be both one car and two car accidents?

A. Yes it was.

Q. And a part of this training was to develop methods and means of determining a speed of which an automobile would be traveling before an accident occurred?

A. Right."

Record at 831–833. This evidence reveals Brown was trained to observe and record accident scenes in order to determine or estimate, among other things, the speed at which vehicles were traveling before they collided from data such as skidmarks and damage to the vehicles.

Initially, we observe this accident was not a common collision accident, as it did not involve a collision impact of one object upon another. Rather, the vehicle's motion was stopped by its left rear wheel snagging on a guy wire. The damage to the vehicle apparently resulted from the exertion of tensile forces, as opposed to compressive forces. In addition, the record reveals the vehicle was substantially different from the usual vehicle. It was a dune buggy, with a fiber glass body fastened in some unexplained manner to a Volkswagen chassis. The protection to its passengers was limited by the open characteristics of the dune buggy-type body.

Though Brown did testify one of the factors he was trained to evaluate was "damage to a vehicle" involved in an accident, he did not testify as to the formula, calculation or method he was using and as to its components. The trial judge, in exercising his discretion, had only Brown's self-serving statements that he could give a qualified opinion. This is insufficient.

We assume there is a formula, calculation or principle by which the speed of Roberts' vehicle could be determined. However, we, as was the trial judge, are uninformed as to its components. We hypothesize the formula, etc., might require information such as

the weight and load of the vehicle, the weight of each of the occupants' respective bodies and perhaps, the manner and means by which the fiber glass body was attached to the chassis and the manner and means by which the steering wheel and rear seats were held in position. It might also include the properties of fiber glass or other factors unique to this particular factual situation inasmuch as this accident appears to have resulted from tensile as opposed to compressive forces.

We hold the trial court abused its discretion in permitting Brown to testify as to his opinion, as an expert, of the speed of Martin's vehicle because Roberts failed to offer the necessary evidence of his expertise in or with a formula, calculation or principle. Further, he did not appear to offer the necessary evidence of the facts unique to this accident which one would plug into the formula to calculate the speed of this particular vehicle.[1] Evidence of each is a prerequisite to the trial court's exercise of its discretion in an informed manner.

Martin's liability is predicated on the exception in the Indiana Automobile Guest Statute, I.C. 9–3–3–1 (Burns Code Ed., 1980 Repl.) (emphasis added) which reads:

"The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage of a guest, while being transported without payment therefore, in or upon such motor vehicle, resulting from the operation thereof, *unless such injuries or death are caused by the wanton or willful miscon-* *duct of such operator, owner, or person responsible for the operation of such motor vehicle."*

In determining what constitutes "wanton and willful misconduct as a matter of law," our supreme court has concluded speed and intoxication, occurring together, may rise to the level of sanctionable misconduct. *Hubble v. Brown,* (1949) 227 Ind. 202, 84 N.E.2d 891. In this case, once Brown's speed opinion testimony is excised from the record, there is no indication of any misconduct by Martin other than intoxication. Indeed, all the dune buggy passengers testified they were not concerned with Martin's driving. Given that "neither speed nor drunkenness alone is evidence of wanton and willful misconduct with [sic] the purview of the Guest Statute," *Oliver v. Estate of Clemons,* (1968) 142 Ind.App. 499, 236 N.E.2d 72, 75, the exclusion of Brown's testimony leaves this record bare of an element essential to establishing wanton or willful misconduct by Martin.

We reverse and remand this case to the trial court for a new trial.

BUCHANAN, C.J., concurs.

SULLIVAN, J., concurs.

---

1. However, admittedly, the determination of the availability of the facts supporting the components of the formula, etc., cannot be made without the formula, etc., first being submitted.