Arlo D. MARTIN, Appellant
(Defendant below),

v.

Mary ROBERTS, Appellee (Plaintiff below).

No. 684S249.

Supreme Court of Indiana.

June 22, 1984.

Herbert A. Spitzer, Jr., Phillip E. Stephenson, Browne, Torrance, Spitzer, Herriman, Browne & Stephenson, Marion, for appellant.

Richard E. Sisson, Marion, for appellee.

PIVARNIK, Justice.

This cause comes to us on a Petition to Transfer from the Second District Court of Appeals. Said Petition was brought by Appellee-Plaintiff Mary Roberts. Roberts originally sued Appellant-Defendant Arlo D. Martin claiming damages for the personal injuries she sustained while riding in a dune buggy driven by Martin.

The facts show that on June 28, 1975, Roberts and three other persons were passengers in Martin's dune buggy. The dune buggy consisted of a home-built fiberglass "kit" body mounted on a Volkswagen "bug" chassis. While driving down a blacktop rural road, Martin's right tires dropped off the side of the pavement. He overcorrected and crossed the road diagonally, veering to the left. The left rear wheel of the dune buggy snagged on a telephone pole guy wire. The dune buggy abruptly stopped, catapulting the passengers from the vehicle and causing the fiberglass body to detach from the chassis. Roberts sustained severe injuries in the wreck and filed suit against Martin alleging that he had engaged in willful and wanton misconduct while driving.

At trial, evidence was introduced which showed that Martin's blood alcohol content measured .12% on a breathalyzer machine. Martin was unable to state definitely how fast he was going but his wife, also a passenger in the vehicle, testified that he was going around thirty-five miles per hour. Indiana State Trooper Ronald Brown arrived at the scene following the accident and was allowed to testify, over objection, that he believed the dune buggy was travelling sixty-five miles per hour at the time of the accident. Trooper Brown's testimony was the only testimony placing Martin's speed above the legal limit of fifty-five miles per hour at the time of the accident. The jury found for Roberts and awarded her $175,000 in damages. The trial court entered judgment in that amount and subsequently denied Martin's motion to correct errors.

The trial court found Trooper Brown qualified as an expert witness and permitted him to state his opinion as to the speed of Martin's vehicle at the time of the accident. The Court of Appeals held that the trial court abused its discretion by permitting Brown to testify as an expert about his opinion regarding the speed of Martin's vehicle because Brown "failed to offer the necessary evidence of his expertise in or with a formula, calculation or principle." We now find that the Court of Appeals erred in its determination of this issue and accordingly vacate the opinion of the Court of Appeals, 452 N.E.2d 182, and grant

transfer. We consider this issue and those other issues raised in the direct appeal to the Court of Appeals which were not decided by them. The issues are as follows:

1. whether the trial court abused its discretion by allowing the introduction of expert testimony on behalf of Roberts as to the speed Martin was operating his dune buggy immediately prior to the accident;

2. whether the trial court erred by giving its final instruction 24;

3. whether Roberts assumed the risk of her injuries;

4. whether sufficient evidence supports the judgment; and

5. whether the amount awarded by the verdict is excessive.

## I

▪ Petitioner Roberts contends that Trooper Brown was qualified to state his opinion by virtue of his training, experience and general knowledge of the subject matter in issue: vehicular speed. Petitioner also contends that Brown's specific knowledge of scientific principles, formulas and calculations was the proper subject of cross-examination. We agree. The rules of evidence do not require that an expert witness demonstrate his knowledge of specific scientific principles, formulas or calculations in order to be qualified to state his opinion. The expert's training, education and experience provides the foundation which embraces the requisite underlying knowledge. The expert's specific knowledge, however, goes to what weight the jury will give to the expert's testimony after cross-examination and the introduction of any evidence by the opponent. Moreover, the specific knowledge of an expert witness is neither determinative of the witness' qualifications as an expert nor of the admission of his opinion into evidence. Petitioner properly states the law on this issue.

The Court of Appeals acknowledged that the parties in this case agreed that the determination of a vehicle's speed by the examination of all facts and circumstances at the accident scene is a proper area for expert testimony since it is an area of expertise outside the knowledge of the average juror. Officer Brown therefore had to show to the trial judge his knowledge and experience in the field to qualify as an expert. Brown testified that at the time of this accident he was an officer with the Indiana State Police engaged in normal police duties such as patrol and the investigation of accidents and crimes. At the time of trial, Brown was a deputy sheriff with similar duties. He received his primary training in the field of accident investigation at the Indiana State Police Academy in Bloomington. Said training was conducted by the Northwest Traffic Institute and included instruction in: 1) measuring skid marks; 2) evaluating physical evidence at the scene; 3) determining speed; 4) determining fault; 5) determining equipment failure; 6) determining the cause of an accident; and 7) making a report. Trooper Brown further testified that he attended annual four-day refresher courses conducted by the Indiana State Police. As part of his training, Brown "investigated" simulated accidents. Training films were sometimes used and involved one and two car accidents contrived to teach Brown how to evaluate vehicle damage at an accident scene. Brown specifically was taught how to determine the cause of an accident and how to estimate speed at the time of the accident. Trooper Brown testified that he had investigated from 200 to 300 accidents at the time of his investigation of the instant accident and had continued to make automobile accident investigations up to the time of trial. The Court of Appeals accordingly found that "Brown was trained to observe and record accident scenes in order to determine or estimate, among other things, the speed at which vehicles were traveling before they collided from data such as skidmarks and damage to vehicles." Accordingly, there is no question, as the Court of Appeals and the parties acknowledge, that witness Brown qualified as an expert witness in the subject at hand.

Trooper Brown also testified about the factual basis for his opinion testimony. He stated that he arrived at the scene of the instant accident approximately fifteen minutes after it occurred and met a county officer and another trooper who already were there. Brown observed Martin at the scene and noticed a strong odor of alcohol on his breath. He assisted with the investigation by taking pictures of the scene and measurements of the path of the vehicle. He observed the conditions of the roadway and determined where the car first ran off the road. He and Trooper Caward also determined that the vehicle had traveled on the grassy berm a distance of 159 feet before regaining the road. Brown then determined that the "buggy" traveled in a diagonal line 120 feet across the road and to the point where it came to rest. He observed the length and type of skidmarks apparent on the pavement and determined that the impact was between a guy wire and the rear wheel of the vehicle which caused the fiberglass body to almost completely rip-off the frame. Minor pieces of debris were lying about approximately twenty feet forward of the vehicle's location. The bodies of the passengers, one dead, were estimated to be twenty feet from the vehicle or about the same distance as the debris. The steering wheel was bent in the opposite direction from where normally positioned so that it was in front of the front wheels of the vehicle. This, of course, indicated the force of impact upon the steering column presumably made by the driver's body when the vehicle abruptly stopped. The brakes of the vehicle were examined and found to be in operating condition but it was impossible to check the vehicle's steering mechanism because of the extreme damage to it. Brown further offered photographs taken by him and his associates of the vehicle and the general scene. He testified about the frame of the vehicle which was severely twisted. The vehicle was not in driveable condition and there was no tread on the right rear tire. He further testified that there was no obstruction causing the car to return to the roadway as abruptly as it did. There was a culvert extending into the shoulder ahead of the point of return to the road but it was not so close as to require the abrupt return to the road which was apparent. Brown's opinion was that the lack of tread on the right rear tire was to some extent due to the process of skidding 120 feet across the roadway but, for the most part, the tread probably had been missing before the accident. From all of these facts and circumstances, Trooper Brown stated his opinion that the vehicle was traveling sixty-five miles per hour at the time it ran off the road.

The Court of Appeals found Brown's testimony wanting. They specifically found that he had not given a formula, calculation or principle by which the speed of Martin's vehicle could be determined by taking into account the unique structure of the vehicle and the fact that the damage to the vehicle apparently resulted from tensile forces as opposed to the compressive forces usually manifest in an automobile collision. The Court of Appeals hypothesized that the requisite formula might require information such as the weight and load of the vehicle, the weight of each occupant, and the manner by which the steering wheel and rear seats were held in position. A formula also might include the properties of fiberglass or other factors unique to this particular factual situation. We first observe that these factors go more to the weight of Trooper Brown's testimony on this subject rather than to his competency considering the fact that he had qualified as an expert witness on the general subject. Secondly, it would appear that these additional considerations may be valid for a determination of speed but it is not necessarily within our province to say that they must be considered along with the factors Trooper Brown gave. There are doubtless many formulas and principles which experts use in this field or any other to arrive at their ultimate opinions. The determination of which factors, formulas or calculations are necessary, either singly or in conjunction with each other, to form an expert opinion is within the knowledge and

judgment of the expert and, again, is a subject which can be approached and examined in the cross-examination or by bringing forward other expert witnesses. This was well-stated by Justice Prentice in *Travelers Indemnity Co. v. Armstrong*, (1982) Ind., 442 N.E.2d 349. There, the expert witness was a banker experienced in appraising real estate. The banker was called as an expert witness to give an appraisal value for a certain residence. His testimony disclosed that he was very familiar with real estate values and was familiar with the property in issue but apparently was unaware that extensive remodeling to the interior of the residence recently had been done which may have influenced its actual value. The banker's personal knowledge of the property preceded its remodeling. The trial court permitted the banker's testimony and, on review, Justice Prentice stated:

"The competency of a witness to testify as an expert is a matter to be determined by the trial court judge and subject to his broad discretion. *Lineback v. State*, (1973) 260 Ind. 503, 301 N.E.2d 636; *Tyler v. State*, (1968) 250 Ind. 419, 236 N.E.2d 815. *His competency is to be determined by his knowledge of the subject matter generally, whereas his knowledge of the specific subject of the inquiry goes to the weight to be accorded to his opinion.* We see no error in the Court's having permitted the witness to testify, although the credibility of his opinion might be subject to considerable scrutiny." (emphasis added).

*Travelers*, 442 N.E.2d at 365. This holding was consistent with our following holding:

"Courts have never undertaken to set up a standard of scientific knowledge by which the competency of a witness may be determined, and have not gone to the extent of holding that a scientific witness can only testify from facts learned by him from personal demonstration. The general rule, in such cases, in this State at least, seems to be that *where a witness exhibits such a degree of knowledge, gained from experiments, observations, standard books, or other reli-*

*able source, as to make it appear that his opinion is of some value, he is entitled to testify,* leaving to the trial court, in the exercise of a sound discretion, the right to say when such knowledge is shown, *and to the jury the right to say what the opinion is worth;* and, as in all other cases of discretion, *this court will review the action of the trial court only when that discretion clearly appears to have been abused."* (emphasis added).

*Isenhour v. State*, (1901) 157 Ind. 517, 528, 62 N.E. 40, 44. The Court of Appeals has said:

"There are two requisites for the admission of expert testimony. The subject matter of the testimony must be beyond the understanding of a layman so they cannot assess the evidence presented and draw an informed conclusion. Also, the witness must have sufficient skill and knowledge in the field to aid the trier of fact in its search for the truth. *Davis v. Schneider* (1979) Ind.App., 395 N.E.2d 283."

*Underhill v. Deen*, (1982) Ind.App., 442 N.E.2d 1136, 1139; *See also Cromer v. Bridenbaugh*, (1919) 188 Ind. 393, 123 N.E. 115, *reh. denied.* Where a trial court is presented with a witness who has knowledge in and experience with the subject matter before the court and the jury would benefit therefrom, the witness should be permitted to testify as to his opinion leaving the extent of his knowledge and experience to cross-examination and any contrary evidence by the opponent. *Jones v. State*, (1981) Ind., 425 N.E.2d 128; *Lineback v. State*, (1973) 260 Ind. 503, 296 N.E.2d 788, *on rehearing*, 260 Ind. 503, 301 N.E.2d 636, *cert. denied* (1974) 415 U.S. 929, 94 S.Ct. 1440, 39 L.Ed.2d 487.

Petitioner points out that Indiana case law has recognized that there is a scientific basis for determining the speed of a vehicle prior to a collision from facts similar to those presented by Brown and other witnesses in this case. The Court of Appeals has recognized that the speed of a vehicle could be determined by the distance it traveled after it became airborne. *City of In-*

*dianapolis v. Robinson,* (1981) Ind.App., 427 N.E.2d 902, *trans. denied.* Furthermore, the tire marks caused by a skid were properly utilized to determine a "break-out" speed or the speed that a car going through a curve would begin to slide or skid. *Sili v. Vinnedge,* (1979) 181 Ind.App. 658, 393 N.E.2d 251. The Court of Appeals also has held that photographs of damages sustained by vehicles were mute evidence as to the speed of an automobile and evidence of the driver's failure to lookout and to have his automobile under reasonable control. *Morgan v. Reneer,* (1970) 148 Ind. App. 90, 264 N.E.2d 71, *Trans. denied* (1971) We agree with Petitioner that all of these factors which have been singularly or collectively recognized as indicia of speed are present in this case and these indicia together with other facts form an adequate basis for Trooper Brown's opinion. Trooper Brown's testimony both regarding his qualification as an expert and the facts he used to make his speed determination in this case were sufficient to justify the trial judge in permitting him to state his opinion and there was no abuse of discretion by his doing so.

## II

▇▇▇ Respondent-Appellant Martin claimed on appeal that the trial court erred by giving its final instruction 24 to the jury. Appellant specifically claims that instruction 24: 1) misstated the law because it implied that mere riding in a vehicle cannot constitute incurred risk; and 2) was misleading and confusing because it did not include the other elements of incurred risk. Instruction 24 was one of three final instructions given by the trial court which dealt with the issue of incurred risk. Instruction 22 read:

"When a person knows of a danger, understands the risk involved and voluntarily exposes himself to such danger or when a guest voluntarily joins in or assents to wanton misconduct by an operator of a motor vehicle, that person is said to have 'incurred the risk' of injury."

Instruction 23 read:

"In determining whether the plaintiff incurred the risk, you may consider the

experience and understanding of the plaintiff; whether the plaintiff had reasonable opportunity to abandon or leave the vehicle; whether a person of ordinary prudence, under the circumstances, would have refused to continue and would have abandoned the vehicle."

Instruction 24 read:

"The mere fact that Mary Roberts was riding with Defendant, Arlo D. Martin, does not mean that she incurred risk of injury or death, or was guilty of any wanton misconduct of her own."

Appellant does not claim nor do we observe that all three of these instructions taken together are an improper statement of the law with regard to incurred risk. In fact, they appear to be proper and complete on the subject. Appellant's first objection to instruction 24 is not valid because it is true that the mere riding in a vehicle does not constitute incurred risk. The necessary elements of incurred risk are that the person riding in the vehicle have knowledge of the danger in question, appreciate it and voluntarily choose to expose himself or herself to such danger thereby incurring the risk incident thereto. *Gerrish v. Brewer,* (1979) Ind.App., 398 N.E.2d 1298. Appellant's second objection to the instruction is also without merit since the elements of the doctrine of incurred risk are included in instructions 22 and 23 which were read by the trial court together with instruction 24. It is well-established and elementary that instructions to the jury must be viewed as a whole and construed in harmony with each other and it is not necessary for any one instruction to contain all the law applicable to the case. *Hughes v. State,* (1983) Ind., 453 N.E.2d 275. Furthermore, the trial court instructed the jury in final instruction 2 that all of the law in the case was not embodied in any single instruction and that they should consider the instructions as a whole and construe them in harmony with each other. We therefore find no error on this issue.

## III

▇▇▇ Appellant also claimed that the defense of incurred risk was established as a

matter of law because the evidence showed that Roberts voluntarily joined in the venture which resulted in the accident causing her injuries. Martin's burden of proof on this issue was to establish at trial, by a preponderance of the evidence, that Roberts had knowledge of a risk and that she understood the danger and voluntarily exposed herself to it. On appeal, Martin's burden is to establish that the evidence most favorable to Roberts, together with all reasonable inferences, conclusively established that she knew of, and understood, a given danger and that she voluntarily exposed herself to that danger. Ind.R. Tr.P. 9.1(A) places the burden of pleading and proving the defense of incurred risk upon Defendant-Appellant Martin. Plaintiff-Appellee Roberts now claims that Martin does not cite any evidence establishing that Roberts had actual knowledge of Martin's degree of intoxication, that Roberts had actual knowledge that Martin's driving ability was substantially impaired or that Roberts knew that Martin was under the influence of alcohol in violation of statute. Roberts contends, therefore, that there was a question of fact presented to the jury about the defense of incurred risk and that such defense was not established as a matter of law by Roberts' testimony or by the singular or combined testimony of all of the other witnesses in the case. Roberts further contends that the jury was properly instructed on that issue and properly determined the issue adversely to Martin.

Although there is conflict in the evidence on this point, we do not agree with Martin that there is a showing here that Roberts assumed the risk as a matter of law. Roberts points out that the evidence shows that Roberts and Martin were together with others from a time shortly before leaving the Gas City VFW until the accident just over one hour later. During this time, Roberts observed Martin drink one beer at Upland and one beer at Matthews. Furthermore, there was testimony that while Roberts was an occupant of the rear seat of the dune buggy, she was bent over with her face in her hands because the dune buggy was open and the wind velocity

on the occupants was strong as the buggy traveled down the highway. There was evidence, therefore, that Roberts was not able to fully determine the conduct of Martin which would have alerted her to his intoxicated condition or to his otherwise improper driving. An inference of constructive knowledge is not sufficient to establish an assumption of risk as a matter of law. Constructive knowledge is not a part of the doctrine. It rather must be shown that there was an actual knowledge on the part of the plaintiff as to the risk involved and an assumption of that risk with such actual knowledge. *See Kroger Co. v. Haun*, (1978) 177 Ind.App. 403, 379 N.E.2d 1004, *reh. denied*. The Court of Appeals has stated:

> "... the very essence of incurred risk is the conscious, deliberate and intentional embarkation upon a course of conduct with knowledge of the circumstances, ..."

*Gerrish*, 398 N.E.2d at 1301. *See also Moore v. Moriarty*, (1981) Ind.App., 415 N.E.2d 779. The question of whether Roberts incurred the risk of her injuries was an issue to be decided by the jury as trier of fact and we find no error on this issue.

## IV

Martin next claims that there was insufficient evidence to support the jury's verdict. He specifically asserts that there is insufficient evidence to sustain a finding of willful or wanton misconduct and that his motion for judgment on the evidence should have been granted by the trial court on those grounds. It is his view that the jury's verdict and the trial court's judgment are contrary to the evidence.

This is a guest passenger case and as such is governed by the provision of the Indiana Guest Statute, Ind.Code § 9–3–3–1 (Burns 1980), which requires the showing of wanton or willful misconduct on the part of the motor vehicle operator causing the loss and damage. Roberts, as a guest, had the burden of proving that her injuries were caused by the wanton or willful mis-

conduct of Martin, the operator of the motor vehicle. The verdict and judgment having been entered in favor of Roberts, appellate review is directed to the evidence and the reasonable inferences most favorable to her. In reviewing the sufficiency of evidence in a civil case, we will decide whether there is substantial evidence of probative value supporting the trial court's judgment. We neither weigh the evidence nor judge the credibility of witnesses but consider only the evidence most favorable to the judgment along with all reasonable inferences to be drawn therefrom. Only if there is a lack of evidence or evidence from which a reasonable inference can be drawn on an essential element of the plaintiff's claim will we reverse a trial court. *F.D. Borkholder Co., Inc. v. Sandock,* (1980) Ind., 413 N.E.2d 567; *Magnavox Fort Wayne Employees Credit Union v. Benson,* (1975) 165 Ind.App. 155, 331 N.E.2d 46, *reh. denied.*

This Court has held that intoxication accompanied by excessive speed, weaving from one side of the highway to the other or similar misconduct constitutes wanton and willful misconduct. *Hubble v. Brown,* (1949) 227 Ind. 202, 84 N.E.2d 891; *see also Oliver v. Estate of Clemons,* (1968) 142 Ind.App. 499, 236 N.E.2d 72, *trans. denied.* The facts presented to the jury in this case showed that Martin had .12 blood alcohol content, a degree of intoxication sufficient to impair Martin's driving ability by statutory definition. The evidence further showed that Martin drove along a straight, dry roadway in such a manner that the right wheels of his vehicle left the paved portion of the roadway and, upon application of the brakes, skidded 159 feet to a point where Martin turned the wheels too sharply and reentered the paved portion of the road. There was no obstruction which required the sharp turn. After the vehicle was back on the road, it skidded diagonally across the center line an additional 120 feet and struck a guy wire several feet away from the road with the left rear wheel of the vehicle. The force of the impact was so great as to bend forward the vehicle's steering column, throw the back seat to the front, throw the occupants and various parts of the vehicle twenty feet into a field and demolish the vehicle's fiberglass body while bending the frame. There also was evidence that Martin was driving 65 miles per hour in a 55 mile per hour zone. We now find that there were facts presented to the jury from which they could reasonably determine that Martin was guilty of willful and wanton misconduct. We therefore find no insufficiency of evidence here as a matter of law.

V

Finally, Appellant Martin claims that the jury's verdict and the trial court's judgment is for an excessive amount of damages. Appellee Roberts points out that there is no controversy here over the assertion that her injuries were the direct and proximate result of the accident. There also is no controversy as to the severity and permanency of the injuries she suffered and the evidence is uncontroverted that she is in continuous pain and her physical capacity is now limited. The parties stipulated that the hospital and medical bills incurred for Roberts' treatment and care totalled $29,099.65. The evidence was further uncontradicted that she lost wages as a direct result of her injuries in the amount of $9,548.00.

This accident occurred on June 28, 1975. Roberts was taken from the scene of the accident to Marion General Hospital where she was unconscious and remained so until August 2nd or 3rd, 1975, when she recalled awakening at the hospital. At that time she was being fed intraveinously and a tracheotomy tube was in her throat and attached to a breathing machine. She was immobilized with sandbags around her feet. She had suffered fractures of the left 9th, 10th and 11th ribs, a ruptured urinary bladder, a traumatic rupture of the spleen, a severely fractured pelvis, two larger lacerations on the left thigh and severe fat embolisms in the lungs. Roberts' ruptured bladder was surgically repaired and her ruptured spleen was surgically removed.

The pulmonary embolisms suffered during her hospitalization required a tracheotomy with a tube inserted in the base of her neck. The operative report indicated that a fracture of the left inferior and superior public rami was seen against the bladder. A catheter was inserted and Roberts was transfused with three units of whole blood. An additional transfusion was later necessary. On August 17, 1975, it was necessary to apply traction because of her hip pain and traction continued through September 9, 1975. At the time when Roberts first recalled her condition, she was immobilized in her hospital bed and had a big scar on her abdomen, a big scar on her lower leg and a big scab on her hip. She spent forty-nine days in the intensive care unit of Marion General Hospital and was removed to another hospital room before her discharge on September 19, 1975. Upon her discharge from the hospital, she was unable to care for herself and was taken to her Mother's home where she continued her recuperation and was able to walk only with the aid of a walker. She later returned to the hospital for the surgical implantation of an artificial hip socket which required a twelve day hospitalization. She continued to engage in physical therapy and exercise which she testified were performed with great pain, and finally progressed to walking with a cane. She still has limited physical movement and an arthritic condition due to her injuries which causes constant pain. Her orthopaedic surgeon testified that a replacement of her artificial hip socket is to be anticipated within fifteen or sixteen years. He further testified that there are distinct hazards of potential future complications involving the artificial hip joint including infection and injury. In the event of future complications, the prosthesis would be removed and Roberts would have a "flail" hip which would require her to walk on heavy scar tissue with the aid of a cane or crutches and without the benefit of a hip joint. Notwithstanding, she was able to return to work in early 1977 and is now able to walk without assistance with a slight limp. The tracheotomy scar is highly visible and will not improve cosmetically. It was testified that her life expectancy at the time of the accident was 30.86 years.

The basis for reviewing the question of excessive damages was discussed by the Court of Appeals as follows:

"In determining whether the amount of an award is excessive, the reviewing court may only consider the evidence most favorable to the award and cannot substitute its view as to the proper amount of an award for the jury's view unless it clearly appears that the amount awarded is so large it cannot be explained by any reasonable hypothesis other than prejudice, passion, partially (sic), corruption or other improper consideration."

*McCue v. Low*, (1979) 179 Ind.App. 372, 377, 385 N.E.2d 1162, 1165, *Trans. denied*. Considering the evidence before the jury on the damages Roberts suffered and on her past, present and future pain and suffering, we do not find that the jury award of $175,000.00 was based on jury prejudice, partiality or corruption. We also do not find that the jury misunderstood or misapplied the evidence or that their award is based upon consideration of an improper element such as liability insurance. The award is within the parameters of the evidence and we will not substitute our judgment for that of the jury as to reasonable compensation for Roberts. *Stauffer v. Lothamer*, (1981) Ind.App., 419 N.E.2d 203, *trans. denied*.

Transfer is granted, the opinion of the Court of Appeals is ordered vacated and the trial court is in all things affirmed.

GIVAN, C.J., and HUNTER, J., concur.

DeBRULER, J., dissents with opinion in which PRENTICE, J., concurs.

DeBRULER, Justice, dissenting.

I respectfully dissent. A genius at math cannot deduce the area of a circle without knowing the length of its radius. In like manner Trooper Brown could not have deduced the speed of this dune buggy with any reasonable degree of accuracy for two

reasons: first, because he was not armed with any formula or reasonable evaluative process in which to plug his measurements and observations at the scene, and second, because he did not evaluate patently necessary measurements and observations, unique in this situation, including the character of the taught guy wire which would have behaved like the string of a bow, the dissimilar front and rear tires, and the manner in which the light and open fiber glass body had detached at the time of impact from the small foreign made chassis. There are special and unusual traffic cases such as this just as there are special and unusual medical cases, which require the attention of traffic investigators and doctors with heightened training, skill and experience. This Court spoke my mind on this subject in *New York Life Ins. Co. v. Kuhlenschmidt,* (1941) 218 Ind. 404, 425, 33 N.E.2d 340, 348–349, when it said:

> "And it seems to us that as the subject of inquiry becomes more technical, involved, or scientific, the trial court, within whose reasonable discretion is the determination of the qualifications of a witness, should exercise greater care in ascertaining that an offered witness is in a position to throw light on the question."

It became evident at the trial that this case posed a puzzle with which the proffered expert witness was not qualified to deal, and that his opinion should have been taken away from the jury.

Ordinarily I would be content with leaving the weight and credibility of testimony of an expert witness to the trier of fact and the process of cross-examination, and would not dissent here if the witness had actually observed the dune buggy in motion, or had he made observations and measurements at the scene upon which his opinion might reasonably have been grounded. But here I am pressed to the opposite position by the incomplete identification of relevant factual matter and the inability of the witness to demonstrate that he used an accepted and systematic method of reaching his opinion on speed. And finally, as I have studied this case, I am,

unlike the majority, unable to raise the inference from this record that the dune buggy may have skidded for a distance of 120 feet as it traversed the roadway. My vote is to reverse and remand for a new trial.

PRENTICE, J. concurs.